**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kent Steven ALLAIN,
Defendant-Appellant.**

**No. 81–1653.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1982.

Decided Feb. 22, 1982.

---

Leland E. Shalgos, Chicago, Ill., for defendant-appellant.

Warren E. White, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before SWYGERT and PECK,* Senior Circuit Judges, and ESCHBACH, Circuit Judge.

SWYGERT, Senior Circuit Judge.

Defendant Kent Steven Allain was convicted by a jury of knowingly passing counterfeit currency in violation of 18 U.S.C. § 472, and was sentenced to five years imprisonment. In this appeal, he presents several alleged errors as grounds for reversal. For the reasons stated herein, we affirm the conviction.

### I

On Monday, December 8, 1980, tellers at the City National Bank of Kankakee, Illinois, discovered forty-seven counterfeit $20 bills in the weekend deposit of K's Merchandise Mart, located in Bradley, Illinois. The manager of K's traced the bills to a particular sale of stereo equipment, and the clerk who made the sale identified defendant as the purchaser. Three of defendant's latent fingerprints were found on two of the bills.

On Sunday, December 14, 1980, more of these counterfeit $20 bills turned up in San Francisco, California. Police arrested Jeffrey Ballinger and Jesse Watkins when they attempted to pass these bills at a shopping center. Watkins confessed to Secret Service agents and told them that he had received the bills from Gregg Bartolomei. According to Watkins, Bartolomei had stated to him that he and "Arnie" (later determined to be Arnold Silva) got the counterfeit bills from someone in Illinois. On December 15, 1980, Watkins led the agents to Silva's home, where they arrested defendant after observing him leaving the house. Arnold Silva was arrested on December 18, 1980, after he passed three of the counterfeit bills at a toy store.

Both Silva and Bartolomei made several statements to Secret Service agents between the time of their arrest in December 1980 and the trial in March 1981. On December 19, 1980, Silva told agents that he had received the counterfeit money from the recent sale of a pound of high-quality marijuana (sinsemilla) for $2,000, and that he did not know that the bills were counterfeit. Bartolomei told the agents (in Silva's presence) that he had received $2,000 in counterfeit bills on consignment from defendant.

On February 19, 1981, Bartolomei surrendered himself at the Secret Service office in San Francisco in response to a subpoena. The next day he stated to an agent that he had lied in his statement of December 19, that in fact it was Silva who received the counterfeit money from defendant and that the amount was $16,000 rather than $2,000. On February 23, a Secret Service agent met with Bartolomei and Silva, who then gave more details of the dealings between themselves and defendant. The story they told then was basically the same one to which they testified at trial: On December 6, 1980, Silva and Bartolomei arrived at defendant's home in Kankakee to pick up a car that Silva had purchased from defendant. At that time, defendant paid Silva $2,000 for the pound of sinsemilla. After Bartolomei and Silva returned to California,

---

* The Honorable John W. Peck, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

defendant spoke with Silva, offering to sell $16,000 of counterfeit money for a quantity of marijuana. According to Silva, defendant told him that he had passed counterfeit bills to purchase his new stereo, and that it was easy to pass the bills if they were wrinkled. Silva relayed this conversation to Bartolomei, and they found a source for eight pounds of marijuana at a price of $650 to $670 a pound. Defendant agreed to give Silva the $16,000 and let Silva hold the marijuana until enough counterfeit money had been passed to pay off the source. Silva then gave half of the counterfeit currency to Bartolomei.

Defense counsel first learned of these inconsistent statements at a pretrial hearing. Defense counsel also learned at that time that the counterfeiting charges against Watkins and Silva had been dismissed and that Bartolomei had received immunity in exchange for his testimony.

At the trial, Watkins, Silva, and Bartolomei testified for the prosecution. Evidence concerning marijuana transactions was first brought out before the jury by defense counsel during his cross-examination of Watkins. When the Government later elicited testimony about marijuana dealings between defendant and Silva, defense counsel made no objection.

Defendant was convicted by the jury of knowingly passing counterfeit currency, and was sentenced to five years imprisonment. This appeal followed.

## II

Defendant's first allegation of error is that the trial court improperly admitted testimony of other criminal acts committed by defendant. Defendant refers specifically to the testimony of Watkins, Silva, and Bartolomei about marijuana dealings with defendant. He contends that the district court should not have admitted that testimony because it was highly prejudicial and the prosecution had alternative means by which it could have established defendant's knowledge and intent.

Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The advisory committee notes state that:

The rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403.

The issue of the admissibility of the marijuana transactions was raised initially during the pretrial hearing. The Government argued that the testimony was admissible under rule 404(b) to prove knowledge and intent. As the prosecutor stated at the hearing, the consideration for the counterfeit currency was marijuana, and the amount paid in counterfeit bills was substantially above the market price in legitimate currency for marijuana. After hearing the evidence presented at the pretrial hearing, the district judge concluded that the transactions had in fact taken place and that they were probative of knowledge and intent to defraud. Regarding the risk of prejudice, the court stated:

[I]f the defendant would move that I exclude what the transaction was about, that it was to buy controlled substances, I would have to give that very strong consideration because Allain is not on trial for being a dealer in controlled substances, he is on trial for passing counterfeit bills. But I don't know that you want to do that, [defense counsel], because it is a two-edged sword. You want to show the unsavory character of Silva and Bartolomei, that they are controlled substance dealers, but I leave it up to you.... I certainly would consider limiting the Government and not allowing

them to say that the defendant in these other transactions was engaging in deals in controlled substances because of the . . . tendency that the jury would give that undue weight.

Later in the hearing, the following colloquy took place between the court and defendant's attorney:

> The Court: [D]o you want to move the Court . . . to exclude testimony of the dealings in controlled substances?

> Defense counsel: I would, of course, move that if the Court's ruling allowed me to bring up the fact that Silva and Bartolomei are narcotic dealers. [T]hat is impeachment anyway and I don't think it's really relevant to the case.

> The Court: If you bring that out, for instance, on cross-examination, I turn right around and let [the prosecutor] come on re-direct and tell the whole story of what went on because you would open the door.

Defense counsel stated to the court that he preferred to "let everything hang out."

The Government argues persuasively that defendant waived the right to raise this issue on appeal by deliberately failing to move to exclude this evidence, despite the district court's express receptiveness to such a motion, and by failing to object to the testimony when brought out by the Government at trial. Defendant contends that the trial court erred when it presented him with an "impossible choice": either use the evidence of drug dealing to impeach the Government's witnesses but thereby "open the door" for the Government to bring in the evidence that defendant traded the counterfeit currency for marijuana, or exclude the evidence of drug dealing as to defendant and the Government's witnesses. Defense counsel chose the former.

First, we note that if defense counsel believed that the district court was wrong as a matter of law in its ruling on the admissibility of the evidence relating to the drug transactions, then he should have objected to the introduction of the Government's evidence or moved to exclude the evidence in order to preserve the issue for appeal. *See United States v. Gulley*, 404 F.2d 534, 536 (7th Cir. 1968). Defendant does not contend, and we cannot conclude, that the plain-error doctrine is applicable here; *see* Fed.R.Civ.P. 52(b); therefore, defense counsel's deliberate tactical decision not to object or move to exclude the testimony operates as a waiver. *See Campbell v. United States*, 355 F.2d 394, 395 (7th Cir.), *cert. denied*, 385 U.S. 922, 87 S.Ct. 234, 17 L.Ed.2d 145 (1966).

Further, we believe that the trial court correctly found that if defense counsel impeached the Government's witnesses by asking them about their drug transactions, then the door was opened for the prosecutor to elicit the whole story of the exchange of counterfeit currency for illegal drugs between defendant and the witnesses. *See United States v. Walker*, 613 F.2d 1349, 1353 (5th Cir.), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (1980) ("Cross-examination with respect to part of the transaction enables the opposing party to elicit evidence on re-direct examination of the whole transaction . . . .")[1] *See also United States v. Mackey*, 571 F.2d 376, 383 n.9 (7th Cir. 1978) ("The general rule is that the scope of redirect examination is a matter firmly committed to the sound discretion of the trial court."). Government witness Watkins did not testify to any drug transactions on direct or redirect examination.[2] Bartolomei testified on direct exami-

1. At the pretrial hearing, the trial court found that the drug transactions between defendant and Silva had occurred and that they were probative of the issue of defendant's knowledge and intent. The court did not, however, expressly rule on whether the risk of prejudice to the jury outweighed the probative value of the evidence, as required by Rule 404(b), Federal Rules of Evidence. Because defendant did not object to this testimony or move to exclude it, the question was never squarely presented to the court. We express no opinion on this issue.

2. Watkins was questioned by defense counsel on cross-examination about previous drug transactions that were not related to defendant or the counterfeit currency.

nation[3] about Silva's sale of one pound of marijuana to defendant for $2,000,[4] the exchange of eight pounds of marijuana for $16,000 counterfeit money, and marijuana transactions between himself and Watkins.[5] Silva testified on direct examination about the one pound and eight pound transactions between himself and defendant.[6]

■ Thus, all the testimony elicited by the prosecutor from Government witnesses relating to marijuana dealings by defendant concerned only the two transactions in which defendant paid for the drugs with counterfeit currency, and defense counsel had the opportunity to cross-examine the witnesses about these transactions. Defense counsel, by choosing to use evidence of past drug transactions to impeach the credibility of Government witnesses, opened the door for the Government to elicit details of the transactions as they related to defendant and the charge of passing counterfeit currency.

### III

Defendant's second contention is that the prosecutor's closing argument was improper in that he equated the credibility of Government witnesses with the integrity of the defendant, and accused defense counsel of "tricking" a Government witness. The prosecutor first reiterated the stories told by Silva, Bartolomei, and Watkins to the Secret Service agents. He then stated that "[t]hese are reputable, honest Secret Service Agents and there is no reason to doubt their integrity nor the integrity of the United States." He went on to discuss the inconsistencies between their earlier and later statements, and concluded by telling the jurors: "You have to decide who you are going to believe. That is the duty of the jury. You are the exclusive judges of the

facts proved and the credibility of the witnesses."

Defense counsel, in his closing argument, told the jury: "I do not agree with what the United States Attorney said that I intend to impeach the integrity of the Secret Service Agents. I don't. Those are good men . . . ."

In his rebuttal argument, the prosecutor stated that "[t]he Secret Service Agents who investigated the case are putting up their reputations." Defense counsel then objected, and the court sustained the objection. The prosecutor continued: "And [the Secret Service agent] is saying by his testimony, 'I believe Silva, I believe Bartolomei.'" Defense counsel made another objection, which was also sustained. The prosecutor then discussed Silva's testimony, told the jury that Silva was sincere, then said: "And surely a defense lawyer, or a good defense lawyer, can trick witnesses by asking questions." Defense counsel objected, denying that he had tricked anyone; the court sustained the objection.

■ We find that these statements, considered within the context of this case, do not constitute reversible error. First, we note that all of defense counsel's objections to the prosecutor's remarks were sustained, and the trial judge later admonished the jury to disregard any evidence to which an objection was sustained. Second, defense counsel in his remarks denied that he had attempted to impugn the integrity of the Secret Service agents. Further, the trial court properly instructed the jurors twice (before and after closing arguments) that arguments of counsel are not evidence and should be disregarded if they have no basis in the evidence. Finally, both the prosecutor and the trial court told the jurors that they were the sole judges of the credibility of the witnesses.

---

3. On cross-examination, defense counsel attempted to impeach Bartolomei by asking him about previous drug transactions unrelated to defendant or this case.

4. Part of the $2,000 defendant paid Silva for one pound of sinsemilla was counterfeit, although Silva testified that he was not aware of this at the time defendant paid him.

5. The testimony about Bartolomei's dealings with Watkins did not relate to defendant or prejudice him.

6. On cross-examination, defense counsel asked Silva about his previous dealings in marijuana.

■ Although we have concluded that the prosecutor's remarks do not rise to the level of reversible error in the circumstances of this case, we nevertheless note that remarks of this type are generally improper. We repeat our past admonitions to federal prosecutors to avoid any comments that could be construed as placing the integrity of the United States Government behind the credibility of a prosecution witness, or those that imply that defense counsel "tricked" a witness. *See United States v. Spain*, 536 F.2d 170, 175, 176 (7th Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976). As we stated in *Spain, supra*:

> Nothing we have said is intended to discourage a prosecutor from vigorous argument or frank comment on the evidence or the character of a witness. The line between the "undignified and intemperate" ... and the "hard" ... or "harsh" ... but fair, is not susceptible of ready definition. It can only be located through a sense of fitness and taste and an appreciation of the prosecutor's proper role .... Those who cannot discern that line with confidence had best stay a safe distance away from it.

*Id.* at 175–76 (citations omitted).

## IV

Defendant's third assertion of reversible error is that the district court should not have refused to give defendant's proposed instruction on the credibility of Silva and Watkins. Defense counsel tendered the following instruction:

> You heard testimony from Arnold Silva and Jesse Watkins that they have been the beneficiaries of treatment by the government in reference to the prosecution of their cases for passing counterfeit money, that treatment being given as an inducement for their testimony in this case.
>
> You may give their testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

· The instruction was rejected by the court because "I do not know what the benefit was that Mr. Silva received, if any, except to have his case held in abeyance, and I already told the jury that they have to consider his testimony with care and caution ...."

■ While we agree with defendant that the credibility of Silva is an important element in this case, we do not believe that the district court erred in rejecting the tendered instruction. The jury was informed that counterfeiting charges against Silva had been dismissed. Further, the trial court instructed the jury:

> You have heard testimony from Arnold Silva who testified that he was involved in the commission of criminal acts which may tend to prove the Defendant's knowledge and intent in the conduct with which the Defendant is charged. You may give Arnold Silva's testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care.

We find that this instruction properly informed the jury of its responsibility to weigh carefully Silva's testimony.

## V

Defendant's final contention on this appeal is that he was denied due process as a result of the prosecution's failure to inform defense counsel prior to trial of evidence favorable to defendant in violation of the *Brady* rule. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant refers to three instances of allegedly improper suppression of *Brady* material by the Government. First, Silva stated at the time of his arrest that he received $2,000 from someone named "Ken" in exchange for a pound of marijuana, that the counterfeit bills in his possession were part of that $2,000, and that he did not know the money was counterfeit; Silva did not say anything at that time about conversations with defendant about counterfeit money. This is inconsistent with his later statement to the Secret Service agents and with his testimony at trial, in which he related con-

versations with defendant about $16,000 of counterfeit currency. Second, Bartolomei in his initial statement said that he received $2,000 in counterfeit bills from defendant, and later, in February 1981, he retracted that statement and said he received the counterfeit money from Silva and that Silva got the bills from defendant. Third, three Government witnesses received preferential treatment regarding their criminal activities in return for their testimony in this case. None of this information was supplied to defense counsel prior to the pretrial hearing on March 9, 1981, the day before the trial began.

Under *Brady, supra,* and its progeny, the prosecutor has a constitutional duty to turn over to the defense material evidence in his possession that is favorable to the defendant, even in the absence of a specific request. *See United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). This obligation extends to evidence that is material for impeachment of prosecution witnesses, *see United States v. Esposito,* 523 F.2d 242, 248 (7th Cir. 1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976), and immunity or other preferential treatment given to prosecution witnesses in exchange for their testimony, *see Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Williams v. Brown,* 609 F.2d 216, 221 (5th Cir. 1980).

Nevertheless, this court has made it clear that "[t]here is nothing in *Brady* or *Agurs* to require that such disclosures be made before trial . . . ." *United States v. McPartlin,* 595 F.2d 1321, 1346 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). As we have held previously, the standard to be applied in determining whether the delay in disclosure violates due process is whether the delay prevented defendant from receiving a fair trial. *Id.* "As long as ultimate disclosure is made before it is too late for the defendant[ ] to make use of any benefits of the evidence, Due Process is satisfied." *United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir. 1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

In the case at bar, we find that defendant has failed to show that he was prejudiced by the prosecutor's delay in disclosing the prior inconsistent statements of Silva and Bartolomei and the favorable treatment received by the witnesses in exchange for their testimony. All of this information came out during the pretrial hearing on March 9, 1981, and although the trial began the next day, our review of the trial transcript satisfies us that defense counsel was able to make good use of the impeaching evidence in his vigorous cross-examination of the prosecution witnesses. We therefore conclude that defendant's due process rights were not violated.

Accordingly, the decision appealed from is AFFIRMED.