**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Luis Anthony PEREZ and Faustino Calderon–Abeja, Defendants–Appellants.**

**Nos. 88–1391, 88–1855.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1989.

Decided March 9, 1989.

Leland Shalgos, Nathan Diamond–Falk, Chicago, Ill., for defendants-appellants.

Helene B. Greenwald, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

On May 8, 1987, defendants Luis Anthony Perez (Perez) and Faustino Calderon–Abeja (Calderon) were arrested after attempting to sell a kilogram of cocaine to undercover Drug Enforcement Administration (DEA) Special Agent Anthony Greco. The grand jury returned a nine-count indictment against Perez, Calderon, Elsa Rego, and her daughter, Angela Rego. Count one charged Perez and Calderon with conspiring with each other, with Elsa and Angela Rego, and with others unknown, to knowingly and intentionally distribute and possess with intent to distribute, cocaine and heroin, in violation of 21 U.S.C. § 846. Perez also was charged with distributing, possessing and possessing with intent to distribute, cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1). Calderon was similarly charged with respect to cocaine only. Both defendants were charged in count seven with using and carrying firearms during and in relation to their commission of drug trafficking crimes charged elsewhere in the indictment, in violation of 18 U.S.C. § 924(c). In counts eight and nine, Calderon and Perez both were charged with being a felon knowingly in possession of firearms that previously had traveled in foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

After a jury trial, the defendants were convicted of all counts with which they were charged. Alleging numerous trial errors, the defendants brought this appeal. We affirm the defendants' convictions.

A.

In April of 1987, a DEA confidential informant asked the Regos, who were living at the Riverside Motel in Chicago, if they could obtain narcotics for him. The Regos in turn asked Perez if he could supply them with two ounces of heroin. On April 27, Perez supplied the Regos with heroin. The next day, the Regos sold one ounce of heroin to DEA Special Agent Patricia Collins, who was accompanied by the informant. Later that day the Regos gave Perez $700 and the unsold ounce of heroin.

After the heroin sale, the informant ordered two ounces of cocaine. On April 30, and again on May 4, DEA Special Agent Greco, accompanied by the informant, came to the Regos' hotel room to purchase the two ounces of cocaine. However, on both occasions, Perez failed to deliver the cocaine. On May 6, Perez delivered the cocaine and the next day Greco bought the cocaine with $3000 in marked government money. Greco also asked the Regos if they could supply him with a kilogram of cocaine. On May 7, Perez picked up $2,200 of the marked government money. At that time, the Regos asked Perez if he could supply a kilogram of cocaine and a half-kilogram of heroin. (On May 7, DEA Agent Collins had contacted the Regos about supplying the heroin.)

During the morning of May 8, Perez arrived at the Regos' motel room with a kilogram of cocaine wrapped in a green package and tucked between his pants and shirt. While he was there, Perez made a number of telephone calls. On three occasions he used the telephone to page the beeper number belonging to Calderon. There were also seven phone calls from a car telephone owned and subscribed to by Calderon to the motel. About 2:00 p.m. that afternoon DEA surveillance agents took up positions in the vicinity of the Riverside Motel. At 4:30 p.m., Collins arrived to purchase the heroin. In the alley behind the motel, Calderon sat in a green Buick Regal. Two calls were made between the motel and the car during this time. Collins found out that the heroin

was not there and left. Perez then went to Calderon's car and they drove to the south of the motel.

At 4:50 p.m., Greco arrived at the motel. Perez and Calderon were still sitting in the green Buick. After Greco talked with Angela Rego, who then spoke to Perez, Perez walked over to Greco and told him it was "too open out here. Let's do it inside." He also said "I got your package here," lifting up his shirt to show Greco the green package. Shortly thereafter, Perez, Calderon, and the Regos were arrested.

Perez and Calderon both were searched. The green package which Perez carried in his waistband contained 1002.43 grams of cocaine. Perez also had 2.51 grams of heroin in his possession. At the time of his arrest, Calderon had a digital display telephone beeper attached to his belt. The car Calderon was driving was also searched. It was equipped with two secret compartments which contained a loaded semi-automatic pistol, a loaded Smith and Wesson .357 Magnum revolver, 5.63 grams of cocaine, two packages of procaine, and an electronic scale. Also recovered were $7,650, $1,600 of which were the marked dollars that Greco had used to pay the Regos on May 6.

The defendants were tried to a jury from November 30, 1987 to December 16, 1987. The jury found Perez and Calderon guilty of all counts in which they were charged. Perez was sentenced to thirteen years imprisonment, to be followed by twenty years of supervised release and five years probation. Calderon was sentenced to eighteen years imprisonment followed by life-time supervised release, five years probation and a $51,000 fine. Defendants then brought this appeal, alleging that numerous trial errors warrant reversal of their convictions.

### B.

■ Perez contends that the trial court erred by refusing to admit extrinsic evidence about Elsa Rego's 1985 narcotics arrest and conviction. In his defense, Perez claimed that Angela and Elsa Rego (who testified for the government) were either

the actual sources of the cocaine and heroin sold to agents Greco and Collins or they were protecting the identity of the actual source. To prove his defense, Perez sought to introduce the testimony of Detective Brent Fowler, the narcotics detective who arrested Elsa Rego in 1985. Although the district court refused to admit the detective's testimony, the court did admit a certified copy of Rego's 1985 conviction under Federal Rule of Evidence 609 to impeach Rego's testimony. (At trial, Rego testified that she had never sold drugs in the past.)

The district court's decision to admit or exclude evidence under Rule 404(b) is reviewed under the abuse of discretion standard. *See United States v. Brown*, 688 F.2d 1112, 1115 (7th Cir.1982). In our view, the district court properly refused to admit the detective's testimony. First, Federal Rule of Evidence 608(b) bars the admission of such testimony for impeachment purposes. That rule provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Fed.R.Evid. 608(b). *See also, J. Yanan & Associates v. Integrity Insurance Co.*, 771 F.2d 1025, 1031 (7th Cir.1985). Second, the testimony did not meet the test of relevance under Federal Rule of Evidence 404(b). Although Perez argues that Rego's prior narcotics conviction shows that she ran the narcotics operation in this case and was the source of the narcotics, nothing in Detective Fowler's proposed testimony indicated that Elsa Rego was the source of the narcotics she sold in 1985 or that she was the "head" of that operation. In short, Fowler's testimony was not relevant to show that Rego, and not Perez, was the actual source of the narcotics sold to Collins and Greco.

### C.

■ Calderon's first argument on appeal is that the district court should have allowed him to admit as substantive evidence the transcript of an interview with Angela

Rego. The transcript contained sworn statements by Rego that contradicted portions of her testimony at trial. Shortly before the trial started, Calderon's attorney contacted Angela Rego's attorney, Michael Logan, and requested an interview with Rego. Although a court reporter was present when Rego was interviewed, the requirements of Federal Rule of Criminal Procedure 15, which sets forth the circumstances in which depositions for criminal proceedings may be taken, were not met.[1]

Calderon sought to admit those portions of Rego's transcript which contradicted her testimony at trial, arguing that those statements were prior inconsistent statements under oath and thus admissible under Federal Rule of Evidence 801(d)(1)(A). In order to be admissible as substantive evidence, the prior statement must be given at "a trial, hearing, or other proceeding, or in a deposition." Fed.R.Evid. 801(d)(1)(A). Because the pretrial interview with Rego did not fulfill the requirements of a deposition under Rule 15, the transcript does not meet the admissibility requirements of Rule 801(d)(1)(A). (The district court did allow Calderon to impeach Rego by calling Logan, who was present at the interview, to testify about what Rego said during the interview.)

██ Because this conclusion is so patently obvious, it is difficult to understand why this issue is before us on appeal. The fault for this lies with the government and not with the defendant. The government sought a copy of defense counsel's interview with Rego, apparently arguing that it *was* a deposition.[2] The court ordered the defendant to provide the government with a copy of transcript, which the government used to prepare Rego for her trial testimony. Then, when Calderon wanted to introduce the document as substantive evidence, the government changed its mind and argued that the transcript was not a deposition and therefore inadmissible. Calderon now argues that the government cannot have its cake and eat it too. He contends that because the government used the transcript, he also should have been allowed to use the transcript. Two wrongs, however, do not make a right. The interview was *not* a deposition. Further, the interview could not have been given in deposition form consistent with the requirements of Rule 15. Because of this, we cannot grant Calderon the relief he seeks; however, we do not condone the government's posture in this situation.

### D.

Calderon's next set of arguments revolves around an in-court identification by a government witness that was suppressed by the district court. In order to prove several counts of the indictment, the government needed to prove Calderon's knowledge of the contents of the secret

1. Rule 15 limits the taking and use of depositions by: (1) requiring the court's permission to take depositions; (2) authorizing depositions only of a party's own witnesses and only where there are exceptional circumstances present making it necessary to preserve the witness's testimony for use at trial; and (3) prohibiting the use of depositions as a method of pretrial discovery of adverse witnesses. *See* Fed.R. Crim.P. 15 advisory committee note (1974 Amendment).

   The pretrial interview of Angela Rego did not meet these requirements. Defense counsel did not give notice of the deposition to the government nor did counsel receive the court's permission to take the deposition. Further, the district court would not have allowed defense counsel to take a discovery deposition of Angela Rego, who was an adverse witness.

2. To seek discovery of the transcript, the government in effect had to concede that the

transcript could be introduced at trial. *See* Fed. R.Crim.P. 16(b)(1). Otherwise, the transcript would not be discoverable under Fed.R.Crim.P. 16(b)(2), which provides that the following is information not subject to disclosure: "discovery or inspection of ... internal defense documents made by ... the defendant's attorneys ... in connection with the investigation or defense of the case or of statements made ... by government ... witnesses or by prospective government ... witnesses, to the defendant, the defendant's agents or attorneys." In response to the government's request for discovery, Calderon argued that the transcript was not discoverable under Rule 16(b)(2). The district court originally ruled that the transcript was a deposition and then apparently changed its mind when Calderon wanted to introduce the transcript under Federal Rule of Evidence 801(d)(1)(A).

compartments in the green Buick. Part of the circumstantial evidence which the government sought to introduce was the testimony of Amador Sanchez Rios. At trial, Rios testified that he sold the green Buick (which belonged to, and was registered to, his co-worker Jose Elias Sanchez) to a "little short man, fat, about 35 or more." Rios also stated that the purchaser "looks ... like that man" and pointed to Calderon.

After Calderon objected to the identification, Rios and Greco were questioned outside the presence of the jury and revealed the following. In either August or September of 1987, Greco had shown Rios a photo spread which included a photograph of Calderon, and asked him if any of the photographs were of the purchaser of the Buick. Rios was unable to identify the purchaser. Greco did not preserve the photo spread and defense counsel was not informed of Rios's inability to identify Calderon. A few weeks before trial, Rios met with the Assistant United States Attorney on the case and described the purchaser of the Buick as fat, around 170, 175 pounds, about 35 years old or older, and about 5'4" or 5'5" tall. Rios was shown a black and white photograph of Calderon, but again was unable to identify him as the purchaser of the car. Defense counsel was not notified.

On December 8, 1987, Rios arrived in court to testify. He volunteered to the Assistant United States attorney that if he saw anyone who "looked a lot" like the purchaser of the Buick, he would so indicate by pointing a finger towards the floor. Shortly thereafter, both defendants, who were in custody, were brought out of the lock-up. Rios then pointed his finger towards the floor.

After the voir dire, the district court granted Calderon's motion to suppress Rios's in-court identification. The court then instructed the jury to disregard Rios's identification, stating that as a matter of law, it must be "totally disregarded." The government then stipulated that Rios was "unable to identify Mr. Calderon as the person who bought the car," and the stipulation was read to the jury. However, the court did permit Rios to testify that the purchaser of the Buick was a "short" man, about 5'4" or 5'5", and about "170, 175" pounds.

Calderon alleges that three errors stemmed from this in-court identification. First, he contends that the district court should have granted his motion for a mistrial because the identification was so prejudicial that he could not have received a fair trial. Second, he contends that the court should have granted his motion to dismiss the indictment because the government failed to disclose to the defense that Rios could not identify Calderon from the photographs. Third, Calderon argues that after the identification was suppressed, Rios should not have been permitted to testify that the purchaser of the car was short and fat.

■ The district court's decision to deny Calderon's motion for a mistrial is reviewed under the abuse of discretion standard. *United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir.1987); *United States v. Phillips*, 640 F.2d 87, 91 (7th Cir.), *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981). We find that the district court did not abuse its discretion; the in-court identification simply was not as prejudicial as Calderon contends. First, Rios only testified that Calderon "looked like" the purchaser; he did not make a positive identification. Any weight the jury would give this identification is further discounted because the jury was informed of all the circumstances which culminated in the identification. Second, the jury was very clearly instructed to disregard Rios's resemblance testimony. We assume that a jury will perform its duty and follow clear instructions. *Fulk*, 816 F.2d at 1205; *Phillips*, 640 F.2d at 91. Given the weakness of the identification and the district court's unequivocal instruction,[3] there is every rea-

---

3. The court gave the following instruction:
   [A]nd then I have a further instruction for you, ladies and gentlemen at this time.

"When we left yesterday the witness Mr. Rios stood up and stated that the man he sold the car to looks like the man over there in brown

son to believe that the jury followed the court's instruction. In addition, the stipulation, which stated that Rios was unable to make an identification, was read to the jury immediately following the instruction. Third, as will be discussed later, there was overwhelming evidence connecting Calderon to the Buick; thus, to the extent that Rios's testimony tied Calderon to the car, it was cumulative and there was no need for the jury to rely upon that testimony to reach its verdict. *United States v. Malsom,* 779 F.2d 1228, 1239 (7th Cir.1985).

■ Next, Calderon contends that the district court should have dismissed the indictment because the government failed to inform Calderon that on two occasions prior to trial Rios was unable to identify Calderon as the owner of the car. He argues that under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the government's delay in turning over this exculpatory information constituted a violation of his due process rights. Although the government is required to turn over exculpatory information, a delay in doing so violates due process only if the "delay prevent(ed) the defendant from receiving a fair trial." *United States v. Allain,* 671 F.2d 248, 255 (7th Cir.1982). A defendant receives a fair trial "(a)s long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence...." *Id. (quoting United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980)).

■ We find that the disclosure was made in sufficient time to enable Calderon to make use of the information. He was able to successfully strike the identification testimony of Rios. Further, he was also able to cross-examine Rios about his inability to identify the purchaser of the green Buick on two prior occasions. *See United States v. Adams,* 834 F.2d 632, 635 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 783, 98 L.Ed.2d 869 (1988) (no due process violation where defense received impeaching information in sufficient time to make "good use" of it in cross-examination); *Allain,* 671 F.2d at 255 (same). Because the delay did not deprive Calderon of a fair trial, we find that the district court correctly denied Calderon's motion to dismiss the indictment.

■ Calderon contends that a third error, stemming from Rios's testimony, occurred when Rios was allowed to testify that the purchaser of the Buick was short and fat. As noted above, evidentiary rulings by the trial court are reviewed under the abuse of discretion standard. *Brown,* 688 F.2d at 1115. The district court ruled that the evidence was admissible because Rios's description could not have been derived from the witness's pretrial viewing of the photographs because the photographs were only head and shoulder snapshots. The court also ruled that the description was admissible because Rios gave this description prior to coming to court; thus, the description was independent of the in-court confrontation. There is simply no basis for finding that the district court abused its discretion in this circumstance.

Although Calderon may have exhausted his arguments concerning the Rios testimony, we feel compelled to comment further. We find the government's conduct unnecessary and unprofessional. The evidence connecting Calderon to the car was in fact unassailable[4]; the charade of putting Rios

---

[Calderon]. The Court has determined, as a matter of law, that the request for him to identify the man who bought the car from him and his answer to that request were objectionable and should be totally disregarded by you and should not be considered by you in any way. So what the Court is instructing you to do is to totally disregard the question, as well as the answer, because as a matter of law, I have determined that it is totally meaningless. So that reference to Mr. Calderon as the man he sold the car to is totally meaning-

less, as a matter of law." So that is my instruction.

4. At trial the following facts were established connecting Calderon to the car. Kenneth Woodham, owner of Woodham Radio Service, testified that around February or March 1987, his company installed a car telephone in the green Buick for Calderon, whom Woodham, unlike Rios, positively identified in open court. This was the same car telephone that Calderon used the day he and Perez were arrested. Woodham also testified that Calderon asked

on the stand to testify that the purchaser "looked like" Calderon was cumulative and needless. The only certain result of this tactic was to provide Calderon an issue upon which to appeal his conviction. Although it did not rise to the level of reversible error, the government's conduct calls into question the integrity of a judicial proceeding. In a closer case, this fact alone may be sufficient to reverse a conviction.

### E.

▮ The last issue that we must address is one in which both defendants join. Calderon and Perez both contend that the government's closing and rebuttal arguments made improper reference to their failure to testify, thereby violating their Fifth Amendment rights and justifying a mistrial. Both direct and indirect references to a defendant's refusal to testify are prohibited by the Fifth Amendment. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (direct reference violates the Fifth Amendment); *Williams v. Lane,* 826 F.2d 654, 664 (7th Cir.1987) (same); *United States ex rel. Burke v. Greer,* 756 F.2d 1295, 1300 (7th Cir.1985) (indirect reference also violates Fifth Amendment). However, indirect references to a defendant's silence at trial violate the Fifth Amendment only if the " 'language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify'." *Greer,* 756 F.2d at 1300 (*quoting United States v. Lyon,* 397 F.2d 505, 509 (7th Cir.), *cert. denied,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968)).

The defendants object to the following comments by the government in rebuttal: [5] "The evidence both direct and circumstantial, we submit to you has proved this case beyond a reasonable doubt that there were four people involved in this narcotics conspiracy. You heard from two of them from the witness stand and they told you what they knew." After the court sustained the objection of defense counsel and told the government to rephrase the comment, the government then stated: "You heard from two of the people that were involved in this drug conspiracy from the witness stand. They told you what they knew, no more, no less." Defense counsel objected again and was sustained.

The government argues that, if taken in context, these statements were not impermissible remarks about the defendant's failure to testify. *See United States v. Hernandez,* 865 F.2d 925 (7th Cir.1989). Perhaps. In any case, we find that even if these comments were error, they were harmless. Comments about a defendant's failure to testify do not necessarily mandate reversal of the conviction; the issue is whether the error was harmless beyond a reasonable doubt. *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Given the compelling evidence against both defendants, we find that any error was harmless beyond a reasonable doubt.

Once again, however, we are compelled to comment further. Although in context the comments *may* have been proper, the government stretched the bounds of propriety to their limits. Because comment about the defendant's exercise of his Fifth Amendment right is obviously impermissible, there is no excuse for any comment, however subtle, which could implicate the defendant's failure to testify. Whatever the merits of the government's argument in this case, we suggest it choose its language more carefully in the future.

### F.

Despite the heavy-handed prosecution of this case, we find that none of the errors

---

him to repair the mechanism which flipped open the doors to the secret compartments in the car. In addition, the Buick bore a license plate registered in Calderon's name, but for another car. Calderon was also the subscriber to the telephone number of the car telephone.

**5.** The defendants also objected to a comment made by the government in closing argument. We find that the comment did not implicate the defendant's failure to testify and was not improper.

alleged by the defendants constitutes reversible error. The convictions of Luis Anthony Perez and Faustino Calderon–Abeja are

AFFIRMED.