**Robert McGESHICK, Petitioner–Appellant,**

**v.**

**Patrick FIEDLER, Respondent–Appellee.**

No. 92–3934.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1993.

Decided Aug. 26, 1993.

David J. Becker, Asst. Atty. Gen. (argued), Office of Atty. Gen., WI Dept. of Justice, Madison, WI, for respondent-appellee.

Before POSNER and FLAUM, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Robert McGeshick was convicted for three small sales (totalling less than half an ounce) of marijuana in Wisconsin state court for Forest County. He was sentenced to five years probation. The key witness against him at trial was Walter Panick, a government informant who made the purchases. Before trial McGeshick's attorney asked the district attorney to reveal any promises, inducements or threats made to Panick, and was told there were none. In post-trial motions and on state court appeals, McGeshick argued that there were threats or inducements, based on two unrelated charges against Panick, that were not revealed. His appeals were denied. He filed this habeas petition charging prosecutorial misconduct tainted his trial. He claims that the district attorney failed to disclose information he could have used to impeach Panick and that the district attorney failed to correct false testimony. The district court denied the request for habeas relief after an evidentiary hearing. This appeal followed.

At trial McGeshick's attorney attacked Panick's credibility. Roger Wilson, the supervising police officer, testified that he contacted Panick when he went to Sheboygan, where Panick was in custody on a charge of unauthorized use of a car, to bring him to Forest County, where he was charged with second degree sexual assault. Wilson stated that he asked Panick to cooperate with him on a drug investigation and told Panick that he would in exchange "look into" the pending charges. Wilson testified that he thought Panick would cooperate to "save his skin." He also testified that when he contacted the police in Sheboygan they told him that the charge was not going anywhere, so he did not really need to do anything.

Charles B. Vetzner (argued), Office of State Public Defender, Madison, WI, for petitioner-appellant.

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

Panick testified that he was told that if he cooperated, maybe things would go easier on him, although no promises were made. He also claimed that the car charge was dismissed and the sexual assault charge reduced for reasons unrelated to his cooperation with this case—that both cases were too weak to go to trial. He stated that he did not feel any pressure to produce a drug buy in exchange for help on the two pending charges.

McGeshick requests habeas relief because he was not told of these charges against Panick before trial, and because, he claims, the full story about the charges and why they were dismissed was not told even at trial. At the evidentiary hearing, McGeshick presented testimony from Deputy Chief Marcheske of the Sheboygan police who stated that Wilson had called him 2–3 times to check on the car charge before it was dismissed. McGeshick also presented evidence that the district attorney in Sheboygan said that a reason for the dismissal was Panick's cooperation in other cases. McGeshick argues that Panick's statement that the dismissal was unrelated to his testimony against McGeshick was false, and that Wilson's testimony that the charge was going to be dismissed anyway and that he did not do anything to get it dismissed was also false.

McGeshick also argues that Panick's testimony that the sexual assault charge had been reduced and that this had nothing to do with his cooperation was false, and that the district attorney's implication on cross-examination that she reduced the charges in the sexual assault case (she was also the prosecutor on that case) because the victim was not credible was also false. McGeshick presented evidence that the charge was actually still pending, unreduced, at the time of trial and that among other things mentioned when it was dismissed was Panick's cooperation.

The district court found that the inducement offered by Wilson, to check into the Sheboygan charge, was revealed, although belatedly, at trial. Because this information was ultimately revealed, the district court found that the delay was harmless error. The district court was unsure of whether there was any deal or threat made with respect to the sexual assault charge, and

therefore decided to hold an evidentiary hearing on this issue. The district court also found a hearing necessary to determine whether the dismissals of the two charges were connected to Panick's testimony, and whether if so the district attorney should have known that Wilson's and Panick's testimony on these points was therefore false and needed to be corrected.

After the hearing the district court found that the Sheboygan charge really had no merit, and would have been dismissed without any contact from Wilson. The phone calls merely reminded them to actually move the paperwork through. He found on the full record that Panick's cooperation was just mentioned as an additional reason to dismiss, not the only or predominant reason. He found this consistent with Wilson's testimony at trial. He also found that there was no false testimony about the sexual assault charge. The evidence showed that the district attorney had spoken with the emotionally disturbed 13–year–old victim, that she had changed her story three times, and that the district attorney was unconvinced that there was ever any physical contact by Panick. Those reasons were given at the time of the reduction in charge to disorderly conduct. Panick's cooperation in other cases was mentioned only in passing. Since there was not false testimony to correct and no deal that should have been disclosed, the habeas petition was denied.

In sum, there were two different charges brought against Panick: the car charge and the sexual assault charge. The car charge was dismissed and the sexual assault charge was ultimately dismissed in exchange for a guilty plea to disorderly conduct. At least initially, McGeshick raised two questions about each charge: 1) whether it had been adequately revealed as possible exculpatory evidence, allowing a fair trial; and 2) whether there had been any false testimony presented concerning the charge and what caused the dismissal of the charge. On appeal this has been narrowed to three issues: 1) whether an evidentiary hearing should have been held to determine whether the delay in revealing inducements to Panick (relating to the car charge) was prejudicial; 2)

whether failure to disclose the delay in dismissing the sexual assault charge was a failure to disclose a threat; and 3) whether the district court's finding that there was no false testimony presented (relating to the car charge) is erroneous.

\*     \*     \*

There is no dispute that under *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) the state was required to reveal Wilson's promises to Panick, because that provided McGeshick with a basis for attacking Panick's credibility. There can also be no dispute that Wilson's promise to "look into the charges" was revealed at trial, but not before. This court has held that although the state may be required to disclose certain material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and progeny, it is not necessarily required to disclose such material before trial. *United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982). We held, "the standard to be applied in determining whether the delay in disclosure violated due process is whether the delay prevented the defendant from receiving a fair trial." *Id.* In this case the district court held that the revelation at trial was not too late, and that McGeshick did receive a fair trial.

On appeal McGeshick states that he is not challenging the substance of the ruling at this time, but only the fact that it was arrived at without an evidentiary hearing. Appellant's brief at 13. McGeshick did suggest in his brief before the district court that "[t]he impact of the tardy disclosure here should be assessed in the proposed evidentiary hearing." However, in the factual allegations contained in his habeas petition there are no contentions relating to the amount of prejudice caused by the delay. "In order to merit an evidentiary hearing on his claims a petitioner must allege facts that, if proven, would be sufficient to entitle him to relief." *Pittman v. Warden, Pontiac Correctional Center*, 960 F.2d 688, 691 (7th Cir. 1992). The facts alleged by McGeshick relevant to this issue, are simply that the promises of assistance were not revealed before

trial, but that they were revealed at trial. These facts do not entitle McGeshick to relief. *Allain, supra.*

Furthermore, McGeshick never requested a continuance or even a recess, which he should have done if the late revelation required him to rework his defense. See *Gorham v. Wainwright*, 588 F.2d 178, 180 (5th Cir.1979). He certainly did not show that the delay prevented him from having a fair trial. *Allain, supra.* There is no error in the district court's ruling on this issue.

\*     \*     \*

Accepting on appeal the district court's finding that no false testimony was offered regarding the sexual assault charge, McGeshick still contends that exculpatory evidence was withheld, because the fact that the charge was not actually dismissed for a year after the plea agreement was made allegedly shows that the district attorney was using the charge as a threat to hold over Panick while he was testifying at trials against other people. McGeshick argues that the district court erred in its first opinion by suggesting that the leverage from keeping the charge open was not the sort of exculpatory evidence that needed to be disclosed. He cites to *United States v. Sutton*, 542 F.2d 1239, 1241–42 (4th Cir.1976) and *United States v. Cody*, 722 F.2d 1052, 1062 (2d Cir.1983) which held that threats were as important as promises. However, although Judge Evans suggested in his first opinion that this leverage did not count as a threat, he actually left the issue open until after the hearing. In his second opinion he denied relief because he found that the existence of this second charge, and the fact that it was still pending, was revealed at McGeshick's trial.[1] Thus, McGeshick's suggestion that we need to decide whether this is the sort of information that the state must reveal is groundless. The information was revealed at trial, and there was no more prejudice from the delay in revelation on this issue than there was with the car charge discussed above. Thus, we need not answer the question posed by McGeshick to decide that there was no violation of due process. The infor-

---

1. Wilson was asked "wasn't the sexual assault    charge still pending" and he answered "yes."

mation was ultimately revealed, whether it was required to be revealed or not.[2]

\* \* \*

■ Finally, McGeshick challenges the district court's finding that Wilson and Panick did not lie in explaining the disposition of the Sheboygan charge. It is clear that offering false testimony is a violation of due process. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The district court found that McGeshick's additional evidence about the contact between Wilson and the Sheboygan authorities did not show that any of Wilson's or Panick's testimony was false, but that their testimony was consistent with the testimony presented in the habeas hearing.

■ While both parties agree that we review findings of fact in habeas proceedings under the clearly erroneous standard, see e.g. *United States ex rel. Henne v. Fike,* 563 F.2d 809, 813 (7th Cir.1977), they do not agree on whether a factual question is involved here. We have transcripts from both the state and federal hearings before us. There is no question about what was said at the two hearings, only about whether the testimony was consistent. We have previously considered a similar question in the context of 28 U.S.C. § 2254(d), which requires that a federal court considering a habeas petition presume factual findings of the state courts to be correct unless certain exceptions apply. In *Ruiz v. Cady,* 635 F.2d 584 (7th Cir.1980), we held that the question of whether testimony given at two different times was consistent was not a question of fact, but a question of law, and that the § 2254(d) presumption did not therefore apply. Similarly, the question presented in this case is one of law, not fact. Thus, we review de novo.

■ As noted above, Marcheske testified that Wilson called him 2–3 times, rather than once. However, Wilson did not actually state that he only called Sheboygan once; he said

he talked to the investigator there. He was not asked how many times they talked. McGeshick also attacks Wilson's statement that he was told when he called that the charge was "not going anywhere," because the vehicle had been recovered and the owner was likely to drop the complaint. Although Marcheske testified that he does not recall *telling* Wilson that the charge was going to be dismissed anyway, he did say that he *thought* at the time that it was going to be dismissed because it lacked merit. If Marcheske thought that, it is not unlikely that he did in fact say that, as Wilson reported. The statement by the prosecutor in requesting that the charge be dismissed mentioned both Panick's cooperation on other matters and that the vehicle had been returned to the owner as reasons for the dismissal. Thus, the testimony of Wilson and Panick that the charge would have been dismissed anyway was not false. We agree fully with the district court that the testimony is consistent.

The slight inconsistency petitioner hangs his case on concerns the following exchange that occurred between his counsel and Wilson:

Q: So to the best of your knowledge no charges ever came out of Sheboygan County?

A: That's correct.

Q: So then you didn't really have to do anything to complete your end of the bargain in helping Mr. Panick out in Sheboygan County, is that correct?

A: That's correct.

Q: You didn't do or cause anything to be done by anybody else in the criminal justice system here to have any influence on Sheboygan County, is that correct?

A: Did I do anything up here? No, I did not.

Q: And you didn't do anything to have anybody in the criminal justice system

2. McGeshick also suggests that the DA engaged in "machinations" to keep the charge pending, and that this should also have been revealed—presumably to make the delay look more like a threat. The alleged machinations boil down to asking for extensions and delays, and receiving them. The fact that the charge was still pending was revealed to the jury. The side details of exactly how a delay was obtained would not have significantly added to McGeshick's ability to impeach Panick.

here exert any influence in Sheboygan County, is that correct?

A: That's correct.

ST 63. McGeshick argues that this is clearly inconsistent with Wilson's admission and testimony from Marcheske that Wilson called 1–2 more times to see if the charge did get dismissed, and to confirm Panick's cooperation. However, since Wilson was told that the charge was going to be dismissed anyway, he may not have seen these calls to check up on things to be influencing the outcome. Certainly he had made clear that he called Sheboygan at least once. Whether the calls should have been described as doing something "here to have any influence in Sheboygan," is immaterial given that his testimony overall informed the jury that he had promised Panick to try to help him, and that he had in fact called Sheboygan to do so. While better questioning might have made Wilson's testimony more clear, it was certainly not false.

Finally, although Wilson testified at state trial that his help was not necessary to Panick, he also testified that he encouraged Panick to believe that his help was necessary, at least at the outset of the undercover operation, and therefore the jury would be aware of a possible motive to lie on Panick's part.

Other arguments raised in passing by McGeshick are equally groundless, and we therefore, AFFIRM.