In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 07-3947 & 08-2481

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LUIS A. PEREZ,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 387—**Virginia M. Kendall,** *Judge.*
No. 87 CR 354—**Ruben Castillo**, *Judge.*

ARGUED APRIL 1, 2009—DECIDED APRIL 28, 2009

Before POSNER, EVANS, and TINDER, *Circuit Judges*.

EVANS, *Circuit Judge.*  Luis Perez is no stranger to the criminal justice system. Originally convicted and sentenced on federal drug charges following a 1987 jury trial in the Northern District of Illinois, *see United States v. Perez*, 870 F.2d 1222, 1225 (7th Cir. 1989), Perez extended his time in custody through a 1993 prison assault, *see United States v. Perez*, 79 F.3d 79, 80 (7th Cir. 1996); *United States v. Perez*, 43

F.3d 1131, 1132 (7th Cir. 1994), and, most recently, a violation of the conditions governing his supervised release. Perez now asks us to modify this most recent sentence—actually, sentences, as we shall explain—due to various procedural irregularities.

The complications arise from the fact that not one but *two* district judges were responsible for ensuring Perez's good behavior while on supervised release. Judge Ruben Castillo managed the docket from Perez's original conviction in 1987 (N.D. Ill. Case No. 87-CR-354), but a new file was opened when Perez was charged with attacking his cellmate (W.D. Wis. Case No. 93-CR-8). Because the attack occurred at the Federal Correctional Institution at Oxford, Wisconsin, it was prosecuted in the Western District of that state. When Perez was finally released from prison in 2006, however, he returned to the Chicago area, and the Wisconsin case was transferred to the Northern District of Illinois. It was assigned a new docket number (N.D. Ill. Case No. 07-CR-387) and placed in the hands of Judge Virginia Kendall. So by the time 2007 rolled around, we had two judges monitoring Perez—too much of a good thing, as it turns out.

It wasn't long before Perez found his way back into trouble. He failed to attend psychotherapy appointments in 2006; failed several mandatory drug tests in that and the following year; was arrested by Chicago police officers in February 2007 for threatening his wife; and finally was arrested on two later occasions (May 13, 2007, and June 28, 2007) for violating a protective order designed to ensure his family's safety. When the probation department

reported these events to Judges Castillo and Kendall in the summer of 2007, both judges scheduled revocation hearings. There was nothing technically improper about that—the supervised release orders pertained to two separate cases—but, pragmatically, things would get tricky. Consolidating the cases would probably have been a better way to proceed but that, alas, didn't happen.

Judge Kendall ruled first. On August 6, 2007, following an evidentiary hearing, she revoked Perez's release on supervision and sentenced him to 14 months imprisonment to be followed by a fresh, 22-month term of supervised release. That ruling, however, was short-lived. At Perez's request, Judge Kendall reconsidered her decision and held a new hearing. It didn't work out too well for Perez. After receiving new evidence of a veiled threat against a probation officer, Judge Kendall decided Perez deserved more time behind bars: 24 months instead of 14 (followed by 12 months of supervised release). Perez immediately appealed the new sentence arguing, ironically enough, that the court lacked jurisdiction to change the sentence. More on this later.

In the meantime, Judge Castillo held a series of hearings to determine the consequences for Perez in the other criminal case. The same basic evidence was presented, and Judge Castillo came to a similar conclusion in an oral ruling handed down on May 9, 2008: Perez needed more time in prison. But at this point things get fuzzy. Judge Castillo was aware that Perez had appealed Judge Kendall's modified sentence and, according to Perez, the length of Judge Castillo's sentence hinged on the outcome of that

appeal. In Perez's view, premised on the original oral ruling, Judge Castillo intended to sentence him to 12 months imprisonment, to be served consecutively to Judge Kendall's sentence *regardless* of whether the latter sentence was upheld or vacated on appeal. Under this view, Perez would spend less total time in prison if Judge Kendall's original sentence were reinstated; more if the sentence, as modified, held up. The government, on the other hand, relying on later statements by Judge Castillo and the final written judgment issued on June 25, 2008, contends that Judge Castillo wanted his sentence to be completely unaffected by the outcome of the appeal. He meant for Perez to stay in jail for a total of 36 months, period.[1]

Just reciting all this is dizzying. It's no wonder the parties are confused—so are we. But we have a solution. First off, we can make short work of the appeal regarding Judge Kendall's modified sentence. The government agrees that she lacked jurisdiction to reopen the revocation proceedings; like Perez, it urges us to reinstate the original sentence of 14 months imprisonment and 22 months supervised release. We have no other option. Because Judge Kendall modified the sentence in a substantive way well beyond the seven-day period set forth in Rule 35(a) of the Federal Rules of Criminal Procedure, the change fails, at a minimum, for want of jurisdiction. *See United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003); *cf.* Fed. R. Crim. P. 36 (authorizing correction of *clerical* errors at any time).

---

[1] That translates into 31 months—the figure noted in the judgment—when counting credit for time served in connection with Judge Kendall's case.

Yet the parties still cross swords over Judge Castillo's sentence. After reviewing the transcripts and filings, we cannot say with certainty exactly what Judge Castillo intended. We shall therefore vacate the sentence and remand the matter to Judge Castillo so he can craft a new sentence reflecting his original intent. *See United States v. Daugherty*, 269 U.S. 360, 363 (1926) ("Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them."); *United States v. Bullock*, 857 F.2d 367, 372 (7th Cir. 1988) (remanding where sentence was unclear); *United States v. Garza*, 448 F.3d 294, 302 (5th Cir. 2006) (same). To the extent the parties also take issue with the supervised release component of Judge Castillo's sentence, that, too, may be cleared up on remand.

The amended sentence imposed by Judge Kendall is VACATED, and the original sentence is REINSTATED. The sentence imposed by Judge Castillo is VACATED, and the case is REMANDED for resentencing.