**Purvis DAVIS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 784S292.**

Supreme Court of Indiana.

Jan. 21, 1986.

Fishburne & Lewis, Joe Keith Lewis, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Purvis Davis was convicted of murder on December 10, 1983, at the conclusion of a jury trial in the Grant Superior Court II. The trial court declared a hung jury on the death penalty recommendation and proceeded to sentence Appellant to sixty (60) years. On direct appeal Appellant raises the following issues:

1. whether the trial court erred in denying his request for a change of venue;

2. whether the trial court erred in denying his motion to dismiss the death penalty request because the request was made vindictively and in an untimely manner;

3. whether the trial court erred in overruling his objections to the State's motion to strike certain jurors based on their attitudes toward capital punishment;

4. whether the trial court erred in denying his motion for a continuance to allow him to prepare his insanity defense; and

5. whether the trial court erred in denying his motion to dismiss the charge of murder, or in the alternative, to dismiss the death penalty count due to the State's withholding of exculpatory evidence in violation of court order.

On February 15, 1983, Appellant shot Savannah Jackson at close range five (5) times with a 357 magnum handgun, while

Jackson climbed into a car to take her two children to school. Appellant had hidden in the victim's garage and waited for her to leave her house, at which time he exited the garage and shot at Jackson. Appellant surrendered to police later that morning. Jackson survived approximately 48 hours, but expired despite emergency surgery.

## I

Appellant first argues the trial court committed error by denying his motion for a change of venue. He maintains a media blitz covering Jackson's murder created widespread bias throughout the county so that an impartial jury could not be found. Appellant produced evidence of numerous radio broadcasts and newspaper articles that appeared at the time of the shooting.

■ It is well established that for a defendant to show good cause necessary to warrant a discretionary change of venue, he must produce evidence of community bias or prejudice sufficient to convince the trial court he cannot obtain a fair trial in that county. We will not reverse a trial court in its judgment on this issue where there was no reason to believe that any juror was so affected by preconceived opinions as to have been unable to judge the defendant wholly on the law and evidence adduced at trial. *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 517; *Willard v. State* (1980), 272 Ind. 589, 595, 400 N.E.2d 151, 155–156.

■ In the present case, Appellant has shown only that at the time of the shooting there were numerous media reports of the events which included the fact that Appellant was in custody. A review of these reports shows them to be pointedly factual. Appellant fails to show that these reports subsequently caused widespread bias denying him an impartial jury. In fact, a review of *voir dire* reveals that when the trial began, nearly ten (10) months later, the media coverage had no effect on the jurors at all. Despite pre-trial publicity, we find no prejudice to Appellant warranting reversal of his conviction.

## II

■ Appellant next contends the trial court erred by denying his motion to dismiss the death penalty. He bases this argument on two grounds, that the request for the death penalty was made vindictively, and in an untimely manner. In the present case the jury did not recommend the death penalty, nor did the trial court impose such a sentence. There being no prejudice to Appellant we find the issue moot, as we did under identical facts in *Partlow v. State* (1983), Ind., 453 N.E.2d 259, 271.

## III

Appellant maintains the trial court erred and denied him a fair trial by overruling his objection to the State's motion to strike four death-qualified jurors. He contends the four potential jurors were not unequivocally opposed to capital punishment, and therefore should not have been stricken. Appellant argues the result was a jury panel predisposed to recommending the death penalty.

Again we fail to see how Appellant was prejudiced since he did not receive the death penalty, nor was it even recommended. *Id.* Although he argues that death-qualified juries are more apt to convict a defendant than are non-death-qualified juries, Appellant's sole support for his argument is a list of dated law review articles. More recently we have rejected this argument. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 178, U.S. *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 816, 83 L.Ed.2d 809; *Thomas v. State* (1984), Ind., 459 N.E.2d 373, 375; *Fielden v. State* (1982), Ind., 437 N.E.2d 986, 991.

We have long adhered to the concept that prospective jurors may be excused for cause if they will not consider returning a recommendation for the death penalty. *Witherspoon v. Illinois* (1968), 391 U.S. 510, 519–523, 88 S.Ct. 1770, 1775–1777, 20 L.Ed.2d 776, 783–785; *Burris*, Ind., 465 N.E.2d at 177. In reviewing whether a prospective juror was properly excluded we

look to the totality of the questioning to see if he or she was unequivocally opposed to the death penalty. *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1114, *reh. denied* (1984).

 In regard to the four jurors at issue, *voir dire* reveals wavering attitudes depending on what party was asking the questions. While each expressed that in some extreme case they might possibly consider recommending the death penalty, each also stated they would not be able to set aside their personal beliefs against capital punishment in order to follow the instructions of the court. On this basis the trial court properly excused the potential jurors. Viewing *voir dire* in its entirety, we do not see that striking the prospective jurors at issue denied Appellant a fair trial, especially since he did not receive the death penalty.

## IV

Appellant argues the trial court erred by denying his motion to continue the trial to allow him to prepare an insanity defense. He maintains this denial prevented him from receiving adequate representation by counsel. Appellant filed a belated motion to rely on the defense of insanity on the fourth day of trial. After a hearing the trial court ruled in his favor. He then moved for a continuance in order to prepare his insanity defense, which motion was denied.

 The standard for whether the motion was properly denied is one of abuse of discretion. *Montano v. State* (1984), Ind., 468 N.E.2d 1042, 1046. An abuse of discretion will be shown where the record reveals the defendant was prejudiced by the failure to grant the continuance. *Dorton v. State* (1981), Ind., 419 N.E.2d 1289, 1295. We note first that any shortage of time is due to the fact that Appellant, himself, did not advise his counsel of this defense sooner. Furthermore, Appellant was observed by three (3) psychiatrists, from whose testimony the trial judge concluded no further examination was required. Appellant presents testimony of Dr. Joy that he need-

ed more time for examination, but there also was testimony by Dr. Joy that other psychiatrists might not need as much time. In addition to Dr. Joy's testimony there was other testimony presented on the issue of insanity, including court appointed psychiatrists, Appellant, and his family members. In light of all this evidence, Appellant has not shown how a continuance would have assisted in preparing a better insanity defense. Fundamental error, relieving Appellant from the burden of showing prejudice, occurs only where it is established that adequate time was not afforded. *Kimball v. State* (1984), Ind.App., 468 N.E.2d 242, 244, *reh. denied* (1984).

## V

Appellant's final contention is that the trial court erred in denying his motion to dismiss the murder charge, or in the alternative the death penalty request, due to the State's failure to comply with the court's discovery order. During trial it was discovered that a police report concerning a rifle found in the victim's garage had not been turned over to Appellant in answer to a discovery request for any reports or statements of experts, tests concerning fingerprints, or any exculpatory information. The test result failed to show any of Appellant's fingerprints on the rifle.

 The State does have a duty to divulge exculpatory evidence, and failure to do so may result in sanctions by the trial court. *Rowan v. State* (1982), Ind., 431 N.E.2d 805, 819, *reh. denied* (1982). The appropriate remedy is a continuance, but when the defendant is prejudiced by the failure to disclose the sanctions may be more severe. *Id.; Long v. State* (1982), Ind.App., 431 N.E.2d 875, 877.

 In the present case Appellant claims prejudice in that had he known of the report, he would not have admitted certain facts and would have had a stronger argument to counter the "lying in wait" element. We disagree that Appellant was prejudiced. Simply because Appellant's fingerprints were not on the rifle does not

weaken the State's case, nor does it prejudice Appellant in light of other evidence proving the same elements. Appellant's brother testified the rifle was his and that he had lent it to Appellant one day before the murder. There also was testimony that Appellant was seen near the garage when the shooting began, and the victim's children saw Appellant coming out of the garage before he shot their mother.

Appellant has not shown he was prejudiced by the nondisclosure. Neither has he shown that the nondisclosure was in bad faith. Discovery lies within the discretion of the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. *Dudley v. State* (1985), Ind., 480 N.E.2d 881, 901. Appellant has not met this burden.

The trial court is in all things affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.