Herbert A. UNDERWOOD, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8602–CR–206.

Supreme Court of Indiana.

March 10, 1989.

Allen N. Smith, Jr., Moore, Smith & Bryant, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in appellant's conviction of Robbery, a Class A felony, for which he received a sentence of fifty (50) years, Conspiracy to Commit Robbery, a Class A felony, for which he received a sentence of fifty (50) years, Conspiracy to Commit Murder, a Class A felony, for which he received a sentence of fifty (50) years, Murder, for which he first received a sentence of sixty (60) years, and Felony Murder, for which he first received a sentence of sixty (60) years. The trial court then corrected the sentences and the murder and felony murder convictions were merged and appellant was sentenced to death.

The facts are: On the evening of June 4, 1984, Kerry Golden and his friend David Brown went to the Fifty Yard Line bar to drink and watch the dancers. Golden cashed his paycheck that day and had a roll of money in his pants pocket, along with some marijuana.

Brown introduced Golden to Rick Huffman and they all sat together at a table. Brown testified that Golden pulled his money roll out three or four times in Huffman's presence to pay for drinks or to tuck money in a dancer's panties.

Also at the bar were Rick Asbury and appellant, both of whom were friends of Huffman. Asbury testified that they stayed at the bar until it closed, then they smoked a joint in the tavern parking lot.

Asbury, Golden, Huffman, and appellant got into Huffman's car, and Asbury passed out in the back seat. He was awakened when Huffman drove the car down a bumpy road. Asbury did not know where they were.

The car stopped and appellant told everyone to get out, but no one did. Appellant then grabbed Golden's leg and pulled him out of the car and stood next to Golden and Huffman. Asbury heard appellant tell Golden to give up the pot. Asbury saw Huffman hit Golden twice in the face with his fists, and Golden fell to the ground. Then both Huffman and appellant kicked Golden, and appellant dragged him in front of the car. Appellant removed Golden's clothes as Huffman stood nearby. When Golden was completely naked, appellant removed the items in Golden's pockets and put them in his own. Appellant then grabbed Golden's penis and lifted him off the ground as Golden screamed.

Asbury collected Golden's clothes and hid them among some trees. Asbury returned to the car and Huffman asked him for his knife. Huffman held the knife to Golden's throat and said, "If you know what's good for you you won't say anything."

They walked back to the car. Appellant said he had to kill Golden because he could identify them, and he did not want to go to prison. Huffman removed a tire iron from the trunk, and Asbury watched them beat Golden with the tool. Appellant handed the tire iron to Asbury and told him it was his turn. Asbury said he did not want anything to do with it, but appellant insisted. Asbury hit Golden on the shoulder twice with the tool, but he said he already was dead at that time.

They all got inside the car and drove away. Huffman stated he "got a good shot at him at the back of the head." Appellant replied, "I bet we killed a man tonight." Asbury said he had nothing to do with it. Appellant stated their alibi would be that they got in a fight at Picadilly's and then went to Waffle House, and Huffman agreed.

On June 5, 1984, James Price was employed as a police officer for Conrail. He received a radio dispatch that a body had been found on a Conrail access road near

Rockville Road. Officer Price arrived at the scene and called the homicide division of the Marion County Sheriff's Department. Investigators found a receipt bearing Golden's name and address several feet away from his body.

Police found Golden's roommate at the address on the receipt, and he identified the body. After police connected Asbury to the crime, he agreed to testify for the State in exchange for a plea bargain.

A forensic pathologist testified that Golden suffered blunt force injuries to the head from the tire iron, internal organ injuries and internal bleeding from being stomped in the chest and abdomen, manual strangulation, a laceration of the penis which tore large blood vessels, and each injury by itself would have been fatal.

Appellant argues his motion for change of venue should not have been denied. He asserts that due to the extensive pretrial publicity concerning the case and codefendant Huffman's escape from the Marion County Jail, his motion should have been granted. The record contains several pages of transcripts from television and radio news accounts as well as newspaper articles about the investigation of the murder and Huffman's escape from jail.

■ The disposition of a motion for change of venue rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. To prevail on appeal, the defense must show the existence of prejudicial publicity and that jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085.

■ The State points out that during *voir dire*, sixty-seven prospective jurors were interviewed and nine of them expressed that they had a vague recollection of something about the case but that they could decide the case on the evidence. All nine of these candidates were excused either peremptorily or for cause. Therefore, no juror was seated who expressed he or she had been exposed to pretrial publicity. Because appellant has not shown that jurors were unable to render a verdict based upon the evidence, we find no error. *Id.*

Appellant argues the trial court erred when it denied his motion for individual *voir dire* and sequestration of jurors during *voir dire*. He asserts that collective *voir dire* prohibited candor and honesty among the prospective jurors concerning their knowledge of the case through pretrial publicity.

■ The trial court has broad discretion in controlling *voir dire,* and only an abuse of that discretion will result in a reversal. *Burris v. State* (1984), Ind., 465 N.E.2d 171. Appellant makes a general supposition that he was prejudiced by the lack of individualized *voir dire,* but no evidence was produced to show that any jurors answered dishonestly or were persuaded by the answers of other panel members. As stated above, prospective jurors were asked about their exposure to pretrial publicity, and no juror was seated who expressed he or she had such exposure. Appellant has shown no prejudice in the denial of his motion for individualized *voir dire.*

Appellant also argues that individualized *voir dire* would have prevented the jurors from being influenced by each others' opinions about the death penalty.

■ A defendant has no absolute right to have each juror separately sequestered and questioned. However, in highly unusual or potentially damaging circumstances, individualized *voir dire* may be required. *Id.*

■ The record in appellant's case shows that each prospective juror was asked about his or her feelings in regard to the death penalty and whether he or she could give it fair consideration as an alternative sentence recommendation. Their responses were wide-ranging and nothing indicates that one prospective juror's response was influenced by the others. Because nothing highly unusual or potentially damaging to the defendant was brought to the trial court's attention which would have re-

quired individualized examination of the prospective jurors, we find no error. *Id.*

Appellant argues a prospective juror was incorrectly excused after she expressed her sentiments about the death penalty.

During *voir dire,* prospective juror Halderman was asked in four different ways whether she could fairly consider the recommendation of the death penalty and she stated unequivocally each time that she could not. She further stated that if the judge instructed her that as a juror she had a duty to take an oath to fairly consider the death penalty, she could not take the oath. When defense counsel again asked her if in any case she would at least be open to consider the death penalty, she responded that if she were instructed to consider it as an alternative, she would consider it.

■ Prospective jurors may be excused for cause if they will not consider returning a recommendation for the death penalty. *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The *Witherspoon* case was clarified in the case of *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841. The Supreme Court stated that recent opinions of that Court show no ritualistic adherence to a requirement that a prospective juror make it unmistakably clear that he or she would automatically vote against the imposition of capital punishment. The proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and oath.

This standard does not require that a juror's bias be proved with unmistakable clarity. Deference must be paid to the trial court who was able to see the prospective jurors and listen to their responses during *voir dire. Id.*

■ Mrs. Halderman candidly expressed several times that she could not consider the death penalty, and such statements were sufficient to justify the trial court's determination that she would be unable to faithfully and impartially apply the law. We find no abuse of discretion in her discharge. *Id.; Davis v. State* (1986), Ind., 487 N.E.2d 817.

Appellant also contends the trial court improperly limited *voir dire* examination.

■ During *voir dire,* appellant began questioning prospective jurors about the credibility they would give to a witness who had received a plea bargain in exchange for his testimony. The trial court sustained the State's objection to the questioning. Appellant believes he was denied the opportunity to ascertain the impartiality of the prospective jurors.

We agree with the trial court that such questioning was improper, because it would have given appellant the opportunity to predetermine the weight and credibility the jurors would give to a witness. We find no abuse of trial court discretion. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239.

■ Appellant argues the trial court should have *sua sponte* asked the prospective jurors whether they knew of his codefendant's escape from the Marion County Jail. Appellant simply states that the purpose of *voir dire* is to ascertain whether the prospective jurors can render a fair verdict, but he does not indicate how he was prejudiced by the trial court's failure to question them about the escape. Before appellant is entitled to reversal, he must affirmatively show error prejudicial to his substantial rights. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

Appellant argues the trial court erroneously denied his motion for severance. He argues he should have received a separate trial from Huffman due to the use of the out-of-court statements by Asbury and Huffman about appellant's participation in the crimes.

■ Both Asbury and Huffman testified at trial and were subject to both direct and cross-examination. No prejudice is shown to a defendant whose motion for separate trial was denied when the codefendant-declarant of an extrajudicial statement implicating the defendant elected to take the witness stand and could be cross-

examined. *Crenshaw v. State* (1982), Ind., 439 N.E.2d 620.

Appellant further argues his motion for severance should have been granted because evidence of his codefendant's actions could be imputed to him.

■ The decision to grant or deny a motion for separate trials is within the trial court's discretion. *Dudley v. State* (1985), Ind., 480 N.E.2d 881; *Walker v. State* (1983), Ind., 444 N.E.2d 842. A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of a codefendant reflects on him. There is no constitutional right to be protected from damaging evidence. Witnesses' testimony established distinct roles and actions of each defendant. We find no error. *Id.*

Appellant believes separate trials were in order because the pretrial publicity of the crime and his codefendant's escape from jail were prejudicial to his case.

We stated above that appellant's motion for change of venue was properly denied because he could show no prejudice from the publicity. Therefore, pretrial publicity cannot serve as a ground for separate trials in appellant's case.

Appellant argues he should have had a separate trial because his codefendants' strategies were antagonistic when both Asbury and Huffman stated that they merely tapped the victim and appellant beat him with the tire iron.

■ Mutually antagonistic defenses require severance only if acceptance of one party's mutually antagonistic defense precludes the acquittal of the other. *U.S. v. Ziperstein* (7th Cir.1979), 601 F.2d 281, *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667. Such is not the case here. Appellant's codefendant Huffman stated that he merely tapped the victim and appellant beat him. However, Asbury testified that both Huffman and appellant beat him, stomped on him, and appellant picked him up by the penis. The pathologist testified that any one of the three methods of maiming was sufficient to cause the victim's death. Tennis shoe imprints on the vic-

tim's chest matched the soles of the shoes found next to appellant where he was sleeping when he was arrested. Under these facts, we cannot find that Huffman's defense precluded the acquittal of appellant, and we find no error in the denial of his motion for separate trial.

Appellant contends reversible error occurred when the trial court denied his motion for psychiatric examination and failed to hold a competency hearing.

During a hearing on appellant's motion for psychiatric examination, he testified that he abused alcohol and drugs and that at times he was confused and had difficulty understanding events occurring around him. He further stated that he was on a prescribed antidepressant.

Indiana Code § 35–36–3–1 states that a trial court shall conduct a hearing to determine whether the defendant has the ability to stand trial if the trial court has reasonable grounds for believing the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense.

■ The right to a competency hearing is not absolute, and the trial court's determination on a motion for a competency hearing will be reviewed only for an abuse of discretion. Observations of the defendant's demeanor during pretrial hearings are an adequate basis for finding that a competency hearing is not necessary. *Brown v. State* (1987), Ind., 516 N.E.2d 29; *Adams v. State* (1987), Ind., 509 N.E.2d 812.

■ During the hearing, appellant stated he had not used alcohol since his arrest, and he understood the court proceeding he had just seen. He also stated that he had talked with his attorney about the charges against him, and he understood the meaning of criminal deviate conduct, robbery, murder, and conspiracy. He concluded that in everyday life he had trouble understanding why he had to get up in the morning, and he got high to escape reality. From these facts, we do not find an abuse of trial court discretion in its finding that appellant had an understanding of the pro-

ceedings and was able to assist his counsel in the preparation of his defense. We find no error in the denial of his motion for psychiatric examination.

Appellant argues the trial court's failure to enforce its order for the deposition of a witness denied him a fair trial.

Appellant filed a motion requesting the court to order Asbury to waive his confidential relationship with the person who conducted his lie detector test. The trial court responded that a confidential relationship between a polygraph operator and a defendant does not exist. Appellant requested permission to depose the test operator for the purpose of impeaching Asbury, and the trial court approved, stating there was no reason to prohibit the deposition if it would aid in appellant's defense. Appellant now complains that the trial court erroneously prevented him from obtaining testimony which impeached Asbury's credibility.

Appellant does not state in his brief why he failed to depose the witness or how the trial court impeded his ability to do so. Before appellant is entitled to a reversal, he must affirmatively show that there was error prejudicial to his substantial rights, which he has not done. *Wagner, supra.*

Appellant alleges his warrantless arrest was unlawful and the trial court erroneously denied his motion to suppress evidence which was obtained from him without a search warrant.

Probable cause exists for a warrantless arrest when the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question. *Slaton v. State* (1987), Ind., 510 N.E.2d 1343.

Officer Davis testified that he was prompted to locate appellant due to his conversations with Huffman and Asbury, who implicated appellant in the crime. Officer Davis had knowledge of facts which would warrant a man of reasonable caution to believe that appellant committed the crime. We find probable cause existed for the warrantless arrest.

Between 3:00 and 4:00 a.m. on June 6, 1984, Officer Davis went to the home of appellant's father, who gave Officer Davis permission to enter his home. Upon entering the living room, Officer Davis saw appellant on the couch; he gave him his *Miranda* rights and told him he was under arrest for murder. Officer Davis handcuffed appellant and seized his wallet, shoes, and address book which were next to the couch on which appellant was lying.

Once a subject is under arrest, a reasonable custodial search may be conducted and evidence found thereby is admissible at trial. *Green v. State* (1984), Ind., 461 N.E.2d 108.

Also, after appellant's father gave Officer Davis permission to enter the home, Officer Davis saw the wallet, shoes, and address book. Evidence taken in plain view of an officer is not seized as a product of a search. *Marsh v. State* (1985), Ind., 477 N.E.2d 877. Appellant's motion to suppress was properly denied.

Appellant alleges his motion requiring the State to choose between proceeding under Count III or Count IV of the information was erroneously denied.

Originally appellant was charged with Count I, Robbery; Count II, Criminal Deviate Conduct; and Count III, Murder. The State was granted leave to amend the information to charge appellant with Count I, Robbery; Count II, Criminal Deviate Conduct; Count III, Murder; Count IV, Felony Murder; Count V, Conspiracy to Commit Robbery; and Count VI, Conspiracy to Commit Murder. Appellant argues the amendment was prejudicial because he was prevented from knowing prior to trial which theory of prosecution the State would pursue.

Where a charging instrument contains several counts, each charging a murder of the same person but in a different manner, the question of whether the prosecution should be compelled to elect between counts is a matter of trial court discretion. A single offense may be charged in more than one count, provided that only a single

judgment and sentence are imposed. *Collins v. State* (1988), Ind., 521 N.E.2d 682.

The record shows that appellant received one sentence for the felony murder count which was proper because only one homicide occurred. *Sims v. State* (1988), Ind., 521 N.E.2d 336. We find appellant's motion was properly denied.

■ Appellant contends his motion to dismiss Count V, Conspiracy to Commit Robbery, and Count VI, Conspiracy to Commit Murder should have been granted because their addition to the amended information was prejudicial. He asserts the amendment was one of substance and was prejudicial because his defense under the original information became inapplicable.

Indiana Code § 35–34–1–5(b)(1) allows the amendment of an information as to matters of substance or form at any time up to thirty days before the omnibus date. The record shows the omnibus date was set for August 3, 1984. The State filed its motions to amend the information on July 2 and July 3, 1984. Because the amendments were properly within the 30–day limit, we find no error.

Appellant alleges the trial court erred in admitting into evidence several of the State's exhibits.

Appellant complains about the admission of Exhibits 7 and 14, which were a videotape of the access road and a diagram of the crime scene as observed by Officer Davis. Appellant believes that because there was less foliage on the trees in the videotape than at the time of the crime, because the videotape showed the scene in the daylight instead of during the night, and because an unrelated vehicle appears in the videotape, it was not an accurate representation of the crime scene. He also argues that the diagram of the crime scene failed to properly depict the height of the foliage and the bridge or the location of the railroad tracks so it, too, failed to accurately represent the crime scene.

■ The admission of photographic evidence is within the discretion of the trial court and reversal will occur only upon a showing of an abuse of discretion. *Boze v. State* (1987), Ind., 514 N.E.2d 275. Photographs of a crime scene are generally admissible because they are competent and relevant aids by which a jury can orient itself to best understand the evidence presented. *Hubbard v. State* (1987), Ind., 514 N.E.2d 1263. Before a photograph is admitted, however, it must be established that it is a true and accurate representation of the things it is intended to portray. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80.

■ Two police officers testified that the videotape accurately depicted the scene except for the amount of vegetation. We fail to see how appellant was prejudiced by the disparity in the amount of foliage or the presence of an unrelated vehicle. We find no abuse of trial court discretion in admitting the videotape. *Craig v. State* (1987), Ind., 515 N.E.2d 862.

■ Similarly, we find the diagram of the crime scene was properly admitted. Even a diagram not drawn to scale may be admitted if it is sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036. Officer Davis testified that the diagram accurately represented the crime scene as he observed it, and, unlike photographs of the scene, it showed where both the body and certain property were located. We find no abuse of discretion.

Appellant argues certain photographs admitted into evidence were gory, revolting, and introduced for the purpose of inflaming the passions of the jury.

Exhibits 8 through 12 were color photographs of the crime scene and the body. Two of the photographs were close-ups of the victim's body and his bloody injuries were apparent. Appellant also complains of pre-autopsy photographs which showed the victim's wounds and how the tire iron fit into the wounds.

■ Photographs of a victim's corpse in a homicide case are relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on the cause of death. Also, photo-

graphs showing the victim in his or her natural state following death and before the body has been altered by an autopsy are relevant and admissible. *Dickson v. State* (1988), Ind., 520 N.E.2d 101.

 A police officer and a pathologist testified that the photographs accurately represented the subject intended to be portrayed. The admission of a relevant photograph becomes reversible error only if its tendency to inflame the passions of the jury due to its gruesomeness clearly outweighs its relevancy. *Stamps v. State* (1987), Ind., 515 N.E.2d 507. The photographs were relevant to show the scene of the crime and the identity of the victim, and they corroborated the testimony of the witnesses as to the facts surrounding the crime and the victim's causes of death. We find no error in admitting the photographs.

Appellant also complains about the admission of State's Exhibits 47, 48, and 49 which were photographs of a shirt found in a trash bin behind a Union Oil Station on Rockville Road. Asbury testified that after Golden was robbed and killed they drove to that Union Oil Station where they fixed a dragging muffler. When they arrived at the station they all had their shirts on, but when they left, appellant had his shirt off. Police found Golden's wallet and the shirt in trash receptacles near the station. Appellant contends the photographs of the shirt were irrelevant and cumulative.

 Any fact which legitimately tends to connect a defendant with a crime is admissible when a reasonable inference may be deduced from such evidence. *Martin v. State* (1988), Ind., 528 N.E.2d 461.

 The photographs of the shirt corroborated Asbury's testimony of the sequence of events. A police officer testified that the photographs were an accurate depiction of the subject portrayed. Though the photographs were repetitive in that they showed the shirt from different viewpoints, the admission of cumulative evidence alone is not grounds for reversal. *Seay v. State* (1988), Ind., 529 N.E.2d 106. We find no error in the admission of Exhibits 47, 48, and 49.

Appellant states in his brief that photographic arrays which depicted Huffman, Asbury, Golden, and himself were admitted over his objection but makes no argument establishing how their admission was error or how he was prejudiced. Therefore, any allegation of error he may have intended to pursue is deemed waived. Ind.R.App.P. 8.3.

Appellant asserts the trial court erroneously admitted several other exhibits because they were irrelevant to the proceeding. He objects to the admission of items found at the scene of the crime, which included the victim's blue jeans, boots, shirt, some coins, a lighter, and a Budweiser can. Appellant also complains of the admission of two tire irons into evidence, one of which was the murder weapon.

The trial court has wide latitude in ruling on the admissibility of evidence and in determining its relevancy.

Asbury testified that appellant removed Golden's clothing and robbed him. The exhibits were properly admitted because they were relevant to the determination of where and how the victim was killed and they corroborated Asbury's testimony. We find no error in the admission of the exhibits.

Appellant argues photographs of the victim's wallet, the contents of the wallet, and the trash dumpster in which the wallet was found were erroneously admitted. He objected at trial on the ground that the items were themselves the best evidence and not the photographs.

 The "best evidence" rule requires production of the original writing when the terms of a writing are material. Because the evidence about which appellant complains involved no writing, he had no ground for objection based upon the "best evidence" rule. *Howard v. State* (1976), 264 Ind. 275, 342 N.E.2d 604.

Appellant argues the admission of records kept by the railroad was erroneous because they were irrelevant. The records showed the times during which trains passed through the stations near the crime scene.

Though the relevancy of the records is questionable, appellant has not shown how he was prejudiced by their admission. In light of the amount of evidence establishing his guilt, we find no reversible error. *Gann v. State* (1988), Ind., 521 N.E.2d 330; *Gill v. State* (1984), Ind., 467 N.E.2d 724.

Appellant alleges the trial court improperly denied his motions for mistrial.

The first motion for mistrial was made after the victim's mother cried in the courtroom and then left the room. Appellant moved for a mistrial and requested that the victim's family be removed from the courtroom. The trial court found that the show of emotion was of minimal consequence, but the victim's relatives were told that if another outburst occurred they would be removed from the courtroom. The jury was admonished to disregard the emotional outburst.

The disposition of a motion for mistrial is within the sound discretion of the trial court. *Thomas v. State* (1987), Ind., 510 N.E.2d 651. A mistrial is an extreme remedy which is warranted only when the defendant is placed in a position of grave peril to which he should not have been subjected and lesser-curative measures will not suffice. *Cornelius v. State* (1987), Ind., 508 N.E.2d 548. Usually an admonishment to the jury is considered adequately curative and will support the trial judge in his denial of the mistrial. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied*, —— U.S. ——, 108 S.Ct. 492, 98 L.Ed.2d 490. We find the trial court's admonishment to the jury and the audience cured any prejudicial impact upon appellant's case, and the motion for mistrial was properly denied. *Hill v. State* (1986), Ind., 497 N.E.2d 1061.

Appellant renewed his motion for mistrial the next day when a high school student in the audience became faint and had to be helped out of the courtroom by the sheriff. Appellant believes the incident prejudiced him in the eyes of the jury.

The trial court determined that the incident had no connection with the case and overruled the motion. We agree with the trial court that appellant has not shown that he was placed in a position of grave peril to which he should not have been subjected. *Cornelius, supra.*

Appellant again moved for a mistrial when he believed certain jurors saw him in handcuffs while he was in transit to the jail after the proceedings. He argues his right to a fair trial by an impartial jury was denied because jurors saw him restrained.

We held in *Jenkins v. State* (1986), Ind., 492 N.E.2d 666 that because reasonable jurors could expect a defendant to be in police custody while in transit, he was not entitled to a reversal when jurors saw him handcuffed absent a showing of actual harm. Because appellant has made no showing of actual harm, we find no abuse of trial court discretion in the denial of his motion for mistrial.

Appellant contends his motion for mistrial should have been granted when he notified the trial court that two jurors had been taking notes during final argument, and the court allowed the note-taking to continue.

Whether jurors may take notes is a matter of trial court discretion, and clear error must be shown to establish an abuse of discretion. *Maxie v. State* (1985), Ind., 481 N.E.2d 1307. We find that appellant has not made such a showing, and no error occurred in the denial of his motion for mistrial.

Appellant asserts his motion to strike the testimony of a witness should have been granted.

Laurie Golden, who was divorced from the victim, was called to testify and identify his wallet and the photographs of their daughter which were in the wallet. Appellant argues the testimony was irrelevant and admitted for the purpose of establishing sympathy for the victim.

Appellant did not object when Golden took the stand or answered questions about her relationship with the victim, the wallet, or its contents. He did object when Golden was asked what kind of father the victim had been, and the objection was sustained.

At that time, appellant moved to strike all of her testimony.

Appellant was charged with robbing the victim and he allegedly left the victim's wallet in the Union Oil Station dumpster. Golden's testimony was relevant to prove that the victim in fact owned the wallet police found in the dumpster. We find no error in allowing the testimony. *Brooke v. State* (1987 Ind.) 516 N.E.2d 9.

■ Appellant believes reversible error occurred when the State made reference to the impossibility of cross-examining the declarant of hearsay testimony. On direct examination of a witness for codefendant Huffman, the witness was asked to describe what appellant had told him. The State objected on hearsay grounds and stated that the declarant was unavailable for cross-examination due to his constitutional right to not testify. Appellant moved for a mistrial on the ground that the State improperly referred to his election to not testify. The trial court responded that the jury knows through instruction that any defendant has a right to not testify and his election to do that cannot be considered by them.

Appellant is correct that the prosecution may not use a defendant's decision to not testify to draw an inference of guilt before the jury. *Mahla v. State* (1986), Ind., 496 N.E.2d 568. Appellant's case, however, is not analogous. The prosecution was merely stating the ground for their hearsay objection and was not focusing on appellant's failure to testify. We find appellant was not denied a fair trial by the comment.

Appellant argues his convictions for Robbery and Conspiracy to Commit Robbery were not supported by sufficient evidence. He alleges the State failed to introduce any evidence at trial of any prior agreement between the parties to commit a robbery, and the commission of a robbery by itself does not prove a conspiracy existed.

Upon a question of the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *Gann, supra.*

■ A conviction for conspiracy may rest on circumstantial evidence alone. The agreement, as well as the *mens rea,* may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Id.*

■ Asbury testified that on the morning of the murder Huffman drove the four men down a remote, isolated road near appellant's home. When they got out of the car, Huffman and appellant confronted Golden. Asbury heard Huffman and appellant talking about marijuana, then appellant said, "Give it up." Asbury saw Huffman hit Golden first, then both men began kicking him before they took his money. As they drove from the scene, Huffman and appellant discussed and agreed upon an alibi. Appellant split Golden's money with Huffman and Asbury. These facts sufficiently establish the existence of a conspiracy to rob Golden.

Appellant contends several of his proposed instructions were erroneously denied.

His Tendered Instruction No. 1 stated that intoxication may be so extreme that a person is incapable of forming a specific intent, and that the jury should consider the "states of intoxication" to determine if defendant had specific intent.

The jury was instructed that in order to convict the defendant of a crime the jury must believe beyond a reasonable doubt that he had the specific intent alleged, but he may prove as a defense that he was so intoxicated that he was incapable of forming the specific intent. The instruction explained in detail that the degree of intoxication must be such that the person was incapable of appreciating the wrongfulness of his act or conforming his conduct to the law.

The instruction given covered in greater detail the subject of appellant's tendered instruction. We find no error in the refusal of Tendered Instruction No. 1. *Richey v. State* (1981), Ind., 426 N.E.2d 389.

Appellant also argues his Tendered Instruction No. 3 was improperly refused. His Instruction No. 3 stated that the jury

should cautiously scrutinize testimony from a witness who is testifying in exchange for leniency in his own case.

The jury was instructed that they are the judges of the credibility of the witnesses, and upon a conflict in the testimony, they may consider the interest a witness has in the result of the trial or his relationship to the accused or other interested person in choosing whom to believe.

We held in *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228 that an instruction stating that the testimony of an accomplice who turns "State's evidence" and receives leniency should be highly scrutinized was properly refused because it invaded the province of the jury by commenting on the weight to be given to a witness's testimony. We find no error in the refusal of Tendered Instruction No. 3.

Appellant asserts his tendered instructions on the lesser included offenses of theft, criminal recklessness, voluntary manslaughter, involuntary manslaughter, reckless homicide, and battery should have been given.

The test for determining whether it was error to refuse an instruction on a lesser included offense is: 1) whether the language of the statute and the charging document necessarily included the lesser offense in the greater, and 2) whether evidence was introduced at trial to which the included offense instruction was applicable. *Roland v. State* (1986), Ind., 501 N.E.2d 1034. The evidence must be subject to the interpretation not only that the lesser offense was committed, but also that the greater offense was not. *Gordon v. State* (1986), Ind., 499 N.E.2d 228.

As to the lesser included offenses about which appellant requested instructions, the evidence in his case is not subject to the interpretation that the greater offenses of robbery and murder were not committed. We find no error in the refusal of the instructions.

Appellant believes that two jurors were untruthful and their presence on the panel warrants a reversal of his convictions.

Appellant first complains of juror Killion, who became the foreman of the jury. He asserts that she failed to disclose during *voir dire* her relationship with a paralegal assigned to the prosecutor's office, and because her impartiality was questionable, his convictions should be reversed.

Appellant simply states in his brief that the foreman and the paralegal were associated, but he does not state the nature of their relationship or how he knows one existed, nor did he make a citation to the record to relevant facts supporting his allegation. Without more information, we cannot find a basis for prejudicial error on this issue. Ind.R.App.P. 8.3.

Appellant also believes juror Sarris demonstrated her impartiality by failing to disclose that she is a state leader of the lesbian task force. He cites *State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198 for the proposition that a new trial is in order when a juror fails to disclose information solicited by counsel on *voir dire.*

Appellant makes several citations to the record to support his argument that juror Sarris failed to disclose information solicited by counsel. A review of these citations, however, reveals that Sarris was never asked about her group affiliations or anything remotely related. Additionally, there was no reason for her to believe that the topic was relevant to the proceedings. We do not agree with appellant that her failure to volunteer the information warrants a reversal of his convictions because he has failed to show prejudice from her presence on the jury panel. *Wagner, supra.*

Appellant alleges the trial court erroneously denied certain instructions tendered for the sentencing hearing. A synopsis of his tendered instructions is as follows:

1. It is the jury's duty to recommend what punishment should be imposed upon appellant, and they must recommend whether the death penalty should be imposed, which is carried out by electrocution.

2. Before they can recommend that appellant is sentenced to death by electrocution, it must be proven that the aggravat-

ing circumstances outweigh the mitigating circumstances. If they have any doubts as to the appropriate punishment, they must recommend against the death penalty.

3. The jury must find that a mitigating circumstance exists if there is any substantial evidence to support it.

5. Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating circumstances and may lessen the degree of culpability.

6. Appellant cannot be sentenced to death by electrocution unless each juror finds the aggravating circumstances outweigh the mitigating circumstances. The jury is bound by law to consider the mitigating factors found in the statute and any other mitigating evidence presented.

7. Unless the jury is satisfied of appellant's guilt of at least one aggravating circumstance, they must return a verdict recommending against the death penalty.

9. The jury must consider *any* evidence of mitigating circumstances. No aggravating factors which were not alleged may be considered.

10. The jury must presume that if they recommend appellant to be put to death and the Judge adopts their recommendation, appellant will be executed by electrocution.

11. It is within the jury's power, whether mitigating circumstances exist or not, to recommend mercy for appellant. That recommendation is within their discretion and they may make such a recommendation with or without a reason.

12. If they find an aggravating circumstance exists, they must consider all the evidence tending to show any mitigating circumstances. If the weight of the mitigating circumstances is equal to or exceeds the aggravating circumstances, the jury must recommend against the death penalty.

Appellant argues that the instructions actually given to the jury were inadequate because they failed to describe the manner in which the death penalty would be imposed.

Indiana Code § 35–50–2–9 lists the mitigating circumstances which may be considered when the death penalty is proposed, and subsection (c)(8) states, "Any other circumstances appropriate for consideration". Appellant asserts that under subsection (c)(8) the jury should have been permitted to consider as a mitigating circumstance the fact that the death penalty is carried out by electrocution.

Indiana Code § 35–50–2–9(c)(7) and *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 require the trial court to consider any relevant mitigating evidence during the penalty phase; however, a defendant is not given carte blanche to introduce any evidence concerning the death penalty. The trial court may exclude as irrelevant evidence not bearing on the defendant's character, prior record, or the circumstances of his offense. *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *cert. denied.*, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536. We disagree with appellant's argument that the method of execution should have been offered to the jury as a mitigating circumstance.

The remaining tendered instructions which did not mention execution by electrocution were properly refused. Tendered Instruction No. 3 was improper because it invaded the jury's province to determine the weight of the evidence. Tendered Instruction No. 9 was an incorrect statement of the law because it stated that no other aggravating factors which were not specifically alleged could be considered. *Davis v. State* (1985), Ind., 477 N.E.2d 889, *cert. denied.*, 474 U.S. 1014, 106 S.Ct. 546, 88 L.Ed.2d 475. Tendered instructions which contain an incorrect statement of the law are properly refused. *Richey, supra.*

The substance of Tendered Instructions Nos. 5, 7, 11, and 12 was adequately covered by instructions given at trial, thus were properly refused. *Id.*

Appellant also asserts the trial court erred in sustaining the State's objection to the proposed testimony of a witness for the defense. The witness was prepared to testify that the death penalty was sought by the Marion County Prosecutor in an arbi-

trary and capricious manner. Appellant believes the witness's testimony should have been presented as a relevant mitigating factor.

■ The witness's testimony was properly excluded because it was not relevant mitigating evidence to appellant's case. *Spranger, supra.* Also, there is no constitutional provision prohibiting prosecutorial discretion in charging the death penalty. *Fleenor, supra.* The testimony was properly excluded.

Appellant contends his death sentence must be reversed and a new sentencing hearing permitted because the trial court failed to sufficiently articulate its finding that the aggravating factors outweigh the mitigating factor.

The trial court's written findings, entitled "Judgment of the Court", state in part:

"6. That the defendant Herbert Underwood did intentionally kill Kerry Golden during the course of attempting to commit a robbery.

7. That such aggravating circumstances and intentional killing have been proved by the State beyond a reasonable doubt.

8. That as a mitigating factor the defendant Herbert Underwood, at the time of the commission of said killing was using alcoholic beverages and/or drugs.

9. [The] Court having examined the presentence report and hearing other evidence does not find any other mitigating factors.

10. The Court now finds that the aggravating factors outweigh the mitigating factor and it is the judgment of this Court that the defendant Herbert Underwood, shall suffer the penalty of death for the offense committed."

During the sentencing hearing, the trial court stated that the aggravating circumstance of intentionally killing the victim while committing robbery had been proven beyond a reasonable doubt, and each mitigating factor listed in Ind.Code § 35–50–2–9 was discussed as to whether it applied to appellant's case. Upon a finding that the mitigating factor of drug or alcohol use existed, the trial court found the aggravating factors outweighed the mitigating factor. We find the trial court's sentencing memorandum adequately reflects its findings, and we find no error. *Spranger, supra.*

Appellant contends the trial court gave insufficient weight to the mitigating factor that he was under the influence of drugs and alcohol at the time of the killing.

■ The weight of aggravating and mitigating circumstances by the trial court is discretionary, and the trial court is not required to believe a defendant's proposed mitigating circumstances. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900.

■ During appellant's sentencing hearing, the trial court found that the mitigating factor under Ind.Code § 35–50–2–9(c)(6) existed, but because appellant was able to operate a vehicle, remove the victim's clothes, kick, rob, choke, and lift the victim by the genitals, plan to do the acts and formulate an alibi afterward, the aggravating factors outweighed the mitigating factor. We find no abuse of trial court discretion.

Appellant argues the death penalty constitutes cruel and unusual punishment in violation of the Indiana and United States Constitutions.

■ Appellant concedes that this Court has found contrary to his position, citing *Brewer v. State* (1981), 275 Ind. 338, 417 N.E.2d 889, *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384. However, he asserts that death by electrocution is ghastly, bloody, and an imposition of the death penalty in a freakish manner.

Appellant's argument was rejected by this Court in *Fleenor, supra,* in which we stated that until the Supreme Court of the United States declares electrocution to be contrary to the Eighth Amendment, appellant's position will not be adopted. *Id.* at 89.

Appellant asserts the impact of the cumulative effect of the errors committed throughout his trial denied him his consti-

tutional right to a fair trial. Because we have found no prejudicial error in appellant's trial, we cannot find impact. *Halbig v. State* (1988), Ind., 525 N.E.2d 288.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs as to the conviction but dissents as to the death penalty.