951 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Purvis DAVIS, Petitioner/Appellant,
v.
Richard CLARK, Respondent/Appellee.
 No. 91-1477.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 11, 1991.*
Decided Dec. 19, 1991.
 
 Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 The district court denied Purvis Davis's petition for a writ of habeas corpus. Davis appeals that dismissal raising four claims,[1] and we affirm the district court's decision for the reasons stated in the attached court order.
 
 
 2
 We, however, wish to clarify this court's position on the alleged Brady violations. We agree with the district court that the information disclosed at trial was probably not exculpatory, and certainly not material. See Brady v. Maryland, 373 U.S. 83, 87 (1963) (a prosecutor only has the duty to disclose exculpatory, material information). A piece of evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagely, 473 U.S. 667, 682 (1985). The result of Davis's trial would not have been different if the prosecutor had disclosed the results of the fingerprint tests on the rifle. In fact, it is uncertain what bearing the rifle had on the case when the murder weapon was a 357 magnum handgun. See Davis v. State, 487 N.E.2d 817, 818, 820 (Ind.1986).
 
 
 3
 We also agree that the constitutional demands of Brady were met when the prosecution disclosed the information about the fingerprints at trial and the court allowed a continuance. Under Brady, the government must disclose exculpatory information, but it need not always do so before trial. United States v. Zambrana, 841 F.2d 1320, 1340 (7th Cir.1988); United States v. Allain, 671 F.2d 248, 255 (7th Cir.1982). Evidence disclosed during trial meets the Brady requirements "as long as the ultimate disclosure is made before it is too late for the defendant to make any use of the benefits of the evidence ..." Id. In Davis's case, the prosecution did not disclose the fingerprint results too late to allow the defense to use the evidence. Despite the disclosure at trial, Davis had a recess to prepare his questions and was able to effectively cross-examine the witness.
 
 
 4
 The decision of the district court is therefore
 
 
 5
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF INDIANA
 SOUTH BEND DIVISION
 PURVIS DAVIS, Petitioner
 
 6
 v
 
 RICHARD CLARK, Respondent
 Civil No. S 90-306
 Feb. 12, 1991
 MEMORANDUM AND ORDER
 
 7
 On June 20, 1990, pro se petitioner, Purvis Davis, an inmate at the Indiana State Prison, filed a petition seeking relief under 28 U.S.C. § 2254. The return and motion to dismiss filed by the respondents on November 30, 1990, demonstrate the necessary compliance with Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982).
 
 
 8
 The petitioner was convicted in the Grant Superior Court II at Marion, Indiana, of the crime of murder and was sentenced to a 60-year sentence therefor. The jury was unable to agree on a death penalty recommendation. A direct appeal was taken to the Supreme Court of Indiana which unanimously affirmed the same in an opinion authored by Justice Pivarnik. See Davis v. State, 487 N.E.2d 817 (Ind.1986).
 
 
 9
 A facial examination of that opinion will demonstrate that five issues were there raised:
 
 
 10
 (1) whether the state trial court committed error by denying petitioner's motion for change of venue from county;
 
 
 11
 (2) whether the state trial court erred in denying petitioner's motion to dismiss the death penalty request;
 
 
 12
 (3) whether the state trial court erred and denied the petitioner a fair trial by permitting the state to strike certain jurors over the defendant's objection because of the jurors' attitudes toward capital punishment;
 
 
 13
 (4) whether the state trial court erred in denying defendant's motion to continue the trial to allow his counsel to prepare for the insanity defense; and
 
 
 14
 (5) whether the state trial court erred by denying the petitioner's motion to dismiss the murder charge or in the alternative, to dismiss the death penalty request when it was discovered that at trial the state had withheld exculpatory evidence from the defendant in violation of court-ordered discovery.
 
 
 15
 The state concedes that the above five issues have been exhausted and properly raised here.
 
 
 16
 It must be remembered that this court does not sit as a court of general common law review, but conducts a collateral review limited to constitutional issues. Certainly, there are constitutional circumstances where a motion for change of venue can be considered to raise a constitutional issue. See Irvin v. Dowd, 366 U.S. 717 (1961). With all deference, an independent examination of this record fails to show the kind of egregious publicity problem that existed in Irvin, 366 U.S. at 717, Sheppard v. Maxwell, 384 U.S. 333 (1966), or Estes v. Texas, 381 U.S. 532 (1965). Judge Thomas G. Wright conducted an evidentiary hearing that represents approximately one hundred pages of the state record from page 619 to 713. Examining that record, it is the impression of this court that the publicity generated by the events and the proceedings in regard to this murder were considerably limited and restrained. The state trial judge handling this case is to be commended for the care with which he approached this issue. His decision is not considered to be in any way reversible error by the Supreme Court of Indiana in the Supreme Court's opinion at page 819. Such is not constitutional error under the trilogy of Irvin, 366 U.S. at 717, Sheppard v. Maxwell, 384 U.S. at 333, or Estes v. Texas, 381 U.S. at 532, and their progeny. See Patton v. Yount, 467 U.S. 1025 (1984), and Grancorvitz v. Franklin, 890 F.2d 34 (7th Cir.1989). With all deference, the facts in this case do not approach in any manner the egregiousness of those in Irvin, or Sheppard.
 
 
 17
 The petitioner renews his complaint that the death penalty request of the prosecutor should be dismissed. This court recently published two elaborate opinions where the death penalty has been challenged under 28 U.S.C. § 2254. See Schiro v. Duckworth, Cause No. S83-588 (N.D.Ind. December 26, 1990); and Resnover v. Pearson, Cause No. S88-128 (N.D.Ind. January 11, 1991). The plain and blunt fact of the matter is that no death penalty has been imposed here and this court is hard-pressed to find an arguable constitutional basis now for that complaint. It appears to be completely mooted.
 
 
 18
 A much more difficult and sensitive issue is presented with regard to jury that has been selected for a case in which the death penalty has been requested, invoking the teaching of Witherspoon v. Illinois, 391 U.S. 510 (1968), Wainwright v. Witt, 469 U.S. 412 (1985). See also Patton v. Yount, 467 U.S. 1025 (1984). It is not disputed that during the voir dire of this jury, prospective jurors were questioned in regard to their personal attitudes toward the death penalty. Wainwright v. Witt, 469 U.S. 412 (1985), holds that a trial court's determination that a perspective capital sentence juror should be excluded because of that juror's opposition to capital punishment is a factual issue that is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). It is the trial court judge who sees and hears the prospective juror and is able to examine demeanor in determining juror bias. Patton v. Yount, 467 U.S. at 1025. The Supreme Court of Indiana at page 820 of its opinion made the following finding and deciding with regard to this issue:
 
 
 19
 In regard to the ... jurors at issue, voir dire reveals wavering attitudes depending on what party was asking the questions. While each expressed that in some extreme case they might possibly consider recommending the death penalty each also stated they would not be able to set aside their personal beliefs against capital punishment in order to follow the instructions of the court. On this basis the trial court properly excused the potential jurors. Viewing voir dire in its entirety, we do not see that striking the prospective jurors at issue denied Appellant a fair trial, especially since he did not receive the death penalty. Davis v. State, 489 N.E.2d 817, 820 (1986).
 
 
 20
 The focus is on five jurors that were stricken because of their attitudes toward capital punishment. Both the facts and the reasoning in Witherspoon v. Illinois, 391 U.S. 510 (1968), require close attention. It held that any error in striking jurors because of a general objection to the death penalty would only vitiate the sentence of death. It refused to hold that "the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt." It is elementary that no death penalty was imposed here.
 
 
 21
 Next is whether a juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oaths. A detailed examination of the voir dire of each of the five jurors fails to disclose that the method of their selection violates the Constitution of the United States. The court must also consider the values that inhere in Lockhart v. McCree, 476 U.S. 162 (1986), in which an issue is presented as to whether death qualifying of a jury violates the fair cross section requirement of the Sixth Amendment of the Constitution of the United States. It seems that the Supreme Court of the United States clearly answered that question in the negative. There is no basis to answer it otherwise here.
 
 
 22
 After the jury had been sworn and after jeopardy had attached under the law of Indiana, the petitioner filed a belated motion to rely on the defense of insanity. The state trial judge granted an out-of-jury hearing and gave him leave to file this motion which was indeed an act of generosity. However, a continuance was denied. It's not entirely clear as to how much of a continuance was requested, but any experienced trial judge knows that long unused time gaps in criminal trials after jeopardy has attached present a great number of problems, not the least of which is a chance of a reversal on appeal. The danger which inheres in having a long gap in a criminal jury trial with the jury in the community rather than in the courtroom is a great and proper concern. The Supreme Court of Indiana dealt with this issue at page 820 of its opinion, as follows:
 
 
 23
 We note first that any shortage of time is due to the fact that Appellant, himself, did not advise his counsel of this defense sooner. Furthermore, Appellant was observed by three (3) psychiatrists, from whose testimony the trial judge concluded no further examination was require Appellant presents testimony of Dr. Joy that he needed more time for examination, but there also was testimony presented on the issue of insanity, including court appointed psychiatrists, Appellant, and his family members. In light of all this evidence, Appellant has not shown how a continuance would have assisted in preparing a better insanity defense.
 
 
 24
 Davis v. State, 489 N.E.2d at 820.
 
 
 25
 Certainly, if all this petitioner is now talking about is an arguable violation of some state law or state rule, this court is without jurisdiction to hear it, either under Pennhurst v. Halderman, 465 U.S. 89 (1984), or Engle v. Isaac, 456 U.S. 107 (1982). Normally, the granting of a continuance especially in the middle of a criminal trial is committed to the sound discretion of the trial judge who is responsible for that trial. The Supreme Court of Indiana certainly did not find this to be reversible error and this court does not find it to be constitutional error.
 
 
 26
 There appears to be an argument with regard to the failure to disclose exculpatory evidence. This issue is of constitutional dimension. See United States v. Agurs, 427 U.S. 97 (1976), and Brady v. Maryland, 373 U.S. 83 (1963). A motion for discovery was granted and several discovery supplements were filed. However, during the trial in the state's direct examination of one James L. Fazio, it was discovered that a police report concerning tests from fingerprints of a rifle had not been supplied to defense counsel. Such was then supplied with a copy of the report and all parties agreed to a short recess to allow time to review the report. The defendant objected to any testimony concerning the report and that objection was overruled. However, no further testimony about the report came from that particular witness by the state. On cross-examination by the petitioner, it was established that the rifle had been dusted for prints, but that the witness had not done the dusting. Proceedings were had with regard to motions to dismiss and for sanctions.
 
 
 27
 This circuit has dealt with the Brady/Agurs concept in United States v. Jackson, 780 F.2d 1305 (7th Cir.1986); Palmer v. City of Chicago, 755 F.2d 560 (7th Cir.1985); United States v. Fairman, 769 F.2d 386 (7th Cir.1985); and Carey v. Duckworth, 738 F.2d 875 (7th Cir.1983). In any event, Brady v. Maryland, 373 U.S. at 83, and Agurs, 427 U.S. at 97, addressed the basic constitutional right to be provided, upon appropriate and specified requests, any exculpatory material.
 
 
 28
 It is a little difficult to determine whether the material that is referred to here was indeed exculpatory. It frankly does not appear to be such. In any event, the constitutional demands of Brady were met when the same was disclosed and a recess was granted for its consideration. In any event, the situation does not rise to a constitutional level.
 
 
 29
 A careful examination of the record as presented here fails to disclose any basis for the grant of a writ under 28 U.S.C. § 2254. The same is now DENIED. IT IS SO ORDERED.
 
 
 30
 /s/ALLEN SHARP
 
 CHIEF JUDGE
 NORTHERN DISTRICT OF INDIANA
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Davis raised five claims at the district court level, but has abandoned one on appeal